311 So.2d 97 (1975)
Bernard J. PENN, Appellant,
v.
PENSACOLA-ESCAMBIA GOVERNMENTAL CENTER AUTHORITY et al., Appellees.
ESCAMBIA COUNTY FREEHOLDERS ASSOCIATION, Appellant,
v.
PENSACOLA-ESCAMBIA GOVERNMENTAL CENTER AUTHORITY et al., Appellees.
Nos. 46386, 46572.
Supreme Court of Florida.
April 2, 1975.
Rehearings Denied May 6, 1975.
*99 Bernard J. Penn, in pro. per.
Donald S. Meyer, in pro. per. as Vice-President, for Escambia County Freeholders Association, appellant.
Daniel U. Livermore, Jr., Freeman, Richardson, Watson, Slade, McCarthy & Kelly, Jacksonville, and Louis F. Ray, Jr., Pensacola, for appellees.
ROBERTS, Justice.
This cause is before us on direct appeal from a final judgment of the Circuit Court for Escambia County validating the Revenue Bond Issue not to exceed $6,000,000.00 by the Pensacola-Escambia Governmental Center Authority.
The history, factual background, and holding of the trial judge are reflected in the final judgment of the trial court and are herein restated with approval:
"1. Plaintiff is and at all times hereinafter mentioned was, a body politic and corporate of the State of Florida, created by and existing under the Constitution and Laws of the State of Florida, particularly Chapter 69-1049, Laws of Florida, Special Acts of 1969, as amended and supplemented (herein called the `Act').
"2. Plaintiff, under and by virtue of said Chapter 69-1049 and other applicable provisions of law, is authorized to issue revenue obligations to finance the cost of a governmental center for use and occupancy by the City and the County, their agencies and departments, and other governmental agencies and departments, the initial phase of which has been designated by the Plaintiff as the acquisition of the site of the governmental center and the construction of certain improvements thereto, all to be located in the City of Pensacola, Florida, in accordance with the plans and specifications of the architect as filed and approved by the Plaintiff (hereinafter called `Project').
"3. Pursuant to the laws of the State of Florida, particularly said Chapter 69-1049, the Plaintiff did on the Nineteenth day of June, 1974, duly adopt and pass a resolution (hereinafter called `Resolution') authorizing and providing for the issuance of the obligations, in the denomination of $5,000 each, numbered consecutively from one upward, maturing and bearing interest at such rate or rates not exceeding the maximum rate allowed by statute, and maturing on July 1 in the years 1975 to 2004, inclusive, and authorizing execution of a Trust Indenture in the form attached thereto with a trustee to be later designated by the Plaintiff, ... .
"4. Pursuant to the laws of the State of Florida, particularly said Chapter 69-1049, the City adopted a motion on April 25, 1974, and a resolution on June 27, 1974, and the county adopted a motion on April 24, 1974, and a resolution on June 20, 1974, *100 pursuant to which the City and County each authorized execution by their respective officers of the leases and amendments thereto... . The Resolution also authorizes execution by the Authority of the City Lease and the County Lease.
"5. The rentals to be paid to Plaintiff by the City and the County pursuant to the City Lease and the County Lease to be entered into between the Plaintiff as lessor and the City and the County as lessees, covering the Project, in the manner provided in the Resolution, will be sufficient to pay the amount to become due in each fiscal year for the payment of the principal of and interest on the obligations herein referred to.
"6. The obligations shall be payable both as to principal and interest solely from and secured by a prior lien upon and a pledge of the rentals to be paid to Plaintiff by the City and the County pursuant to the City Lease and the County Lease above described, in the manner provided in the Resolution. The City and the County are obligated to pay said rentals from funds of the City and the County, respectively, lawfully available therefor other than from ad valorem taxation. The obligations will not constitute an indebtedness of the Plaintiff or of the City or of the County within the meaning of any statutory limitation, and no holder or holders of any of the obligations or any coupons appertaining thereto shall have the right to compel the exercise of the ad valorem taxing power of the Plaintiff, the City or the County to pay the obligations or the interest thereon or make any of the reserve, sinking fund or other payments provided for in the Resolution. The obligations shall not constitute a lien upon the Project.
"7. The obligations are not `bonds' within the meaning of the Constitution of Florida, and are not required by the Constitution and Statutes to be approved by an election for the reason that said bonds will be payable solely from the rentals to be derived by the Authority pursuant to the City Lease and the County Lease, said rentals to be payable from legally available sources of the City and the County, respectively, derived from sources other than ad valorem taxation. See Section[s] 4(h) and 5 of the Act; Orange County Civic Facilities Authority v. State, 286 So.2d 193 (Fla. 1973); State v. Orange County, 211 [sic-] 281 So.2d 310 (Fla. 1973).
"8. The Plaintiff, pursuant to the Constitution and Laws of the State of Florida, has the power and is authorized, and in the Resolution has authorized the execution of the City Lease and the County Lease to be entered into between the Plaintiff and the City and the County, covering the Project, in the manner provided in the Resolution. The City and the County have the power and are authorized by the Act, and have authorized, the execution of their respective leases as well. Pursuant to the Leases, the City and the County have each covenanted that they will punctually pay the rentals provided for in the manner and at the times provided in the Leases and that in preparing, approving and adopting the budgets controlling or providing for the expenditures of their funds for each fiscal year, they will appropriate, allot and approve from non-ad valorem funds the amounts sufficient to pay the rentals due under the Leases. The City Lease and the County Lease and such covenants are legal and valid in all respects.
"9. The Project does not unlawfully contemplate any direct or indirect subsidy of The School Board of Escambia County, Florida, or the expenditure of municipal or County funds for a school purpose, in violation of any provision of Article IX or other provision of the Constitution of the State of Florida. Said Chapter 69-1049 expressly authorizes the Plaintiff to acquire, construct, operate, maintain and manage a governmental center complex for the use and occupancy of the City, the County and `other governmental agencies and departments.' Said law further expressly authorizes the City, the County and any school district in the City or County to enter into leases and contracts with the *101 Plaintiff within the provisions and purposes of said law. The Legislature has, therefore, determined that the Project is a proper public purpose to be undertaken in the manner provided by the Resolution and the City and County Leases. Subsection 4[(h)](8) of the Act empowers Plaintiff to grant such leases `for such consideration as it deemes [sic] proper.' Although the City and County Leases allow Plaintiff to negotiate a lease with the School Board for use of the school administration building for a nominal rent, the Act grants such discretion to Plaintiff.
"10. The City and the County are not spending their funds for a school purpose. Rather, the Plaintiff is using its excess revenues as a pledge for repayment of the bonds issued to finance construction of the school facilities which are part of the Project. However, even if the City and County should be construed as expending city and county funds for such purpose, that expenditure would be valid. See Sections 167.28 and 235.055, Florida Statutes. (Section 167.28, although repealed, is still viable as a grant of municipal power under Chapter 73-129, Laws of Florida.)
"11. Although it was asserted at the hearing that various elected officials had promised the people an opportunity to vote on the Project or on the establishment of Plaintiff, the official records of all local governmental bodies are devoid of any requirement for an election for either purpose. This contention is, therefore, without merit, as such public officials speak only as an official body, and the law does not take cognizance of individual expressions of a single member thereof. Beck v. Littlefield, 68 So.2d 889 (Fla. 1953).
"12. Contrary to the County's contention, the Project does not constitute a `capital project' within the meaning of Article VII, Section 12 of the Constitution. That section applies only to bonds payable from ad valorem taxation and, therefore, is inapplicable to the bonds sought to be validated herein.
"13. Defendant Penn asserts that the County was `bribed' to execute the County Lease by the Legislature's promise to locate a state building in the governmental center complex. No evidence of any such promise or representation was presented, but even if made, it would not affect the validity of the County Lease. The validity of the lease authorized by the Board of County Commissioners depends not upon the motivation which might have influenced the members thereof to vote its approval, but rather upon the power of the Board exercised in its official capacity. The Court finds that the Board had, at the time it approved the lease, ample power to do so under State law, and particularly Chapter 69-1049, as amended by Chapter 71-631.
"14. Defendant Penn asserts that membership on the City Council, County Commission and School Board constitutes a conflict of interest on the part of the members of the Plaintiff, thereby rendering all of Plaintiff's actions void. This contention has no merit. The conflict of interest law, Part 3, Chapter 112, Florida Statutes, as amended by Chapter 74-177, Laws of Florida, covers only conflict between private interests and public interests, not conflict between two public offices. The offices are not incompatible, as it is the duty of Plaintiff to provide administrative support to the City, County and School Board. Even if there were some conflict, Defendant's remedy is a direct attack upon the right to hold office as a member of Plaintiff's governing body, by quo warranto, not a collateral attack in this proceeding. State v. Gleason, 12 Fla. 190 (1868); Town of Kissimmee City v. Cannon, 26 Fla. 3, 7 So. 523 (1890). Further, the validity of action previously taken, even if Defendant should institute such a suit and prevail, would not be affected. They would be, even in such an event, de facto officers whose acts are valid. State v. Byington, 168 So.2d 164 (1st DCA, 1964).
"15. Defendant Penn contends that the bonds should not be validated because the *102 Plaintiff's fiscal advisor will purchase the bonds at private sale. There is no evidence to support this contention. Furthermore, the contention is not a proper subject in bond validation proceedings, but should be brought as a separate action to determine the validity of a contract for sale of the bonds if and when future events warrant it. See City of Miami v. Benson, 63 So.2d 916 (Fla. 1953); Renicks v. City of Lake Worth, 18 So.2d 769 (Fla. 1944).
"16. Defendant Penn asserts that the bonds are somehow invalid because they will be payable `in any coin or currency of the United States which on the respective dates of payment thereof is legal tender for the payment of public and private debts.' This provision for payment is entirely consistent with Title 31, United States Code, Section 392, which defines what is legal tender, and is within Plaintiff's authority and discretion to act, and is, therefore, legal and valid in all respects.
"17. The obligations and Leases are of the character, and the proceedings preliminary to the issuance and execution thereof are of the nature, as entitle the Plaintiff to proceed under the provisions of Chapter 75, Florida Statutes, and said Chapter 69-1049, as amended, for the purpose of having the right of the Plaintiff to issue the obligations determined and the validity of the City Lease and the County Lease determined.
"18. Due and proper notice addressed to the State of Florida, the City, and County and the several property owners, taxpayers and citizens of the City and the County, including non-residents owning property or subject to taxation therein and all others having or claiming any right, title or interest in property to be affected by the issuance by the Plaintiff of the obligations hereinbefore described or by the execution of the City or County of Leases by the parties thereto was duly published by the Clerk of this Court in a newspaper of general circulation in Escambia County, Florida, in the manner required by Section 75.06, Florida Statutes, to-wit: in the Pensacola Journal, a newspaper of general circulation in Escambia County, Florida, published in Pensacola, Florida, all as fully appears from the affidavit of the publisher thereof heretofore herein filed.
"19. Chapter 69-1049, Laws of Florida, Special Acts of 1969, as amended, is legal and valid in all respects and does not violate any provisions of the Constitution of the State of Florida... . Chapter 71-631 meets the test of Jackson v. Consolidated Government of the City of Jacksonville, 225 So.2d 497 (Fla. 1959) and is valid in all respects.
"20. The Answers of the State Attorney for and on behalf of the State of Florida and of the City and the County have been carefully considered by this Court. Such Answers show no cause why the prayer of the Plaintiff should not be granted and disclose no irregularity or illegality in the proceedings set forth in said Complaint, and the objections contained in said Answers be and the same are hereby overruled and dismissed.
"21. The Answer and Amended Answer filed by Defendant Penn and the Motion to Dismiss filed by the Escambia County Freeholders Association have been carefully considered, as had Defendant Penn's Memorandum of Law. The objections therein not otherwise addressed in the preceding paragraphs all involve political and policy considerations within the legislative and executive spheres of authority. No abuse of discretion or fraud has been shown. The Court is concerned only with the legal power of the Plaintiff to issue these bonds, not the political or economic wisdom of the Project proposed to be financed with the proceeds of the bonds. These objections are overruled, and the Motion to Dismiss is denied.
"22. Defendant, Escambia County Freeholders Association, asserts that the `Plaintiff is setting up an obligation of unknown scope for future officials to have to support'; *103 essentially because the cost of the entire governmental center complex, if and when completed, may well exceed the sum of $6,000,000 and that the amount necessary to complete the Project in excess of $6,000,000 is unknown at this time. This contention has no merit in this proceeding. In the case sub judice the Court is concerned only with the present availability of City and County funds derived from sources other than ad valorem taxation to amortize the bond issue herein sought to be validated. The evidence before the Court is to the effect that said sources are more than ample to amortize this particular issue of revenue bonds. If any attempt is made in the future to issue additional revenue bonds the Court would, of course, at that time concern itself and deal with the availability at that time of City and County funds lawfully applicable from non-ad valorem tax sources for the amortization of such subsequent issue.
"23. This Court has found that all requirements of the Constitution and Laws of the State of Florida pertaining to the enabling act and proceedings in the above entitled matter have been strictly followed.
"NOW THEREFORE, IT IS ORDERED AND ADJUDGED that the issuance of Revenue Bonds, dated January 1, 1974, of Pensacola-Escambia Governmental Center Authority, Escambia County, Florida, in the sum of not exceeding $6,000,000, in the denomination of $5,000 each, numbered consecutively from one upward, and maturing in numerical order on July 1 in the years 1975 to 2004, inclusive, bearing interest not exceeding the rate of 7 1/2 per cent per annum, principal and semi-annual interest (January 1 and July 1) callable as provided in said Resolution, is for a proper, legal and corporate purpose and is fully authorized by law, and that said obligations and each of them to be issued as aforesaid and all proceedings incident thereto are hereby validated and confirmed. The obligations are to be issued to finance the cost of the acquisition and construction of the Project. The obligations as and when so issued will be payable from and secured by a prior lien upon and a pledge of the rentals to be paid to Plaintiff by the City of Pensacola and Escambia County pursuant to Lease Agreements to be entered into between the Plaintiff as lessor and each of said City and County as lessees covering the Project, in the manner provided in the Resolution. Said Lease Agreements, as amended, in the form attached to the Resolution and the authorizing resolutions of the City and the County, are for proper, legal purposes and are fully authorized by law and, when executed and delivered, will be valid and binding in all respects upon the Plaintiff and upon the lessees and upon all property owners, taxpayers, citizens and other persons in interest within the territorial limits of each respective lessee. However, the Resolution further provides that no ad valorem taxes shall be required to be levied for the payment of the principal of or interest on such obligations, but that such principal and interest shall be payable only from the rentals mentioned above, derived from non-ad valorem funds of the City of Pensacola and Escambia County.
"There shall be stamped or written on the back of each of said obligations a statement in substantially the following form:
"This bond is one of an issue of Bonds which were validated and confirmed by judgment of the Circuit Court for Escambia County, Florida, rendered on the 24th day of September, 1974.
 ___________[*]
 Chairman
provided, however, that should an appeal be taken from this Judgment within the period of thirty (30) days, then and in that event the obligations shall not be delivered to the purchaser or purchasers unless and until a mandate of the Supreme Court of Florida affirming this Judgment shall have *104 been recorded in the Office of the Clerk of this Court.
"IT IS FURTHER ORDERED AND ADJUDGED that both the motion for continuance of Bernard J. Penn and the motion to dismiss of the Escambia County Freeholders Association be, and they are hereby, denied."
We have carefully examined the record and briefs in this cause and it appearing that the able trial judge was eminently correct in so holding and that his judgment is free of error, so the judgment is affirmed.
It is so ordered.
ADKINS, C.J., and BOYD, McCAIN and DEKLE, JJ., concur.
NOTES
[*] Name to be supplied.