583 So.2d 635 (1991)
ST. JOHNS COUNTY, Florida, etc., et al., Petitioners,
v.
NORTHEAST FLORIDA BUILDERS ASSOCIATION, INC., etc., et al., Respondents.
No. 75986.
Supreme Court of Florida.
April 18, 1991.
Rehearing Denied August 15, 1991.
*636 James G. Sisco, County Atty., St. Augustine, and Charles L. Siemon and Michelle J. Zimet, Siemon, Larsen & Purdy, Chicago, Ill., for petitioners.
Michael P. McMahon, Virginia B. Townes and Gregory J. Kelly, Akerman, Senterfitt & Eidson, Orlando, for respondents.
William J. Roberts, Roberts & Egan, P.A., Tallahassee, amicus curiae, for Fla. Ass'n of Counties, Inc.
Ned N. Julian, Jr., Stenstrom, McIntosh, Julian, Colbert, Whigham & Simmons, P.A., Sanford, and Robert L. Nabors and Sarah M. Bleakley, Nabors, Giblin & Nickerson, P.A., Tallahassee, amicus curiae, for School Bd. of Seminole County.
Robert M. Rhodes, C. Alan Lawson and Cathy M. Sellers, Steel, Hector and Davis, and Richard E. Gentry, Tallahassee, amicus curiae, for Fla. Home Builders Ass'n.
Sydney H. McKenzie, Gen. Counsel, State of Fla., Dept. of Educ., and Joseph L. Shields, Tallahassee, amici curiae, for Dept. of Educ., State of Fla., Fla. School Boards Ass'n, Inc. and Fla. Ass'n. of School Adm'rs.
GRIMES, Justice.
We review St. Johns County v. Northeast Florida Builders Association, 559 So.2d 363 (Fla. 5th DCA 1990), in which the district court of appeal certified as a question of great public importance the question of whether St. Johns County could impose an impact fee on new residential construction to be used for new school facilities. We have jurisdiction under article V, section 3(b)(4) of the Florida Constitution.
*637 In 1986, St. Johns County initiated a comprehensive study of whether to impose impact fees to finance additional infrastructure required to serve new growth and development. At the request of the St. Johns County School Board, the county included educational facilities impact fees within the scope of the study. In August of 1987, the county's consultant, Dr. James Nicholas, submitted a methodology report setting forth what action the county could take to maintain an acceptable level of service for public facilities. The report calculated the cost of educational facilities needed to provide sufficient school capacity to serve the estimated new growth and development and suggested a method of allocating that cost to each unit of new residential development. As a consequence, on October 20, 1987, the county enacted the St. Johns County Educational Facilities Impact Fee Ordinance.
The ordinance specifies that no new building permits[1] will be issued except upon the payment of an impact fee. The fees are to be placed in a trust fund to be spent by the school board solely to "acquire, construct, expand and equip the educational sites and educational capital facilities necessitated by new development." St. Johns County, Fla., Ordinance 87-60, § 10(B) (Oct. 20, 1987). Any funds not expended within six years, together with interest, will be returned to the current landowner upon application. The ordinance also provides credits to feepayers for land dedications and construction of educational facilities. The ordinance recites that it is applicable in both unincorporated and incorporated areas of the county, except that it is not effective within the boundaries of any municipality until the municipality enters into an interlocal agreement with the county to collect the impact fees.
The Northeast Florida Builders Association together with a private developer (builders) filed suit against the county and its county administrator (county) seeking a declaratory judgment that the ordinance was unconstitutional. The opposing sides each filed a motion for summary judgment. The trial court entered summary judgment for the builders, declaring the ordinance to be unconstitutional on a variety of grounds. In a split decision, the district court of appeal affirmed, holding that the ordinance violated the constitutional mandate for a uniform system of free public schools.
This Court upheld the imposition of impact fees to pay for the expansion of water and sewer facilities in Contractors & Builders Association v. City of Dunedin, 329 So.2d 314 (Fla. 1976). We stated:
Raising expansion capital by setting connection charges, which do not exceed a pro rata share of reasonably anticipated costs of expansion, is permissible where expansion is reasonably required, if use of the money collected is limited to meeting the costs of expansion.

Id. at 320. In essence, we approved the imposition of impact fees that meet the requirements of the dual rational nexus test adopted by other courts in evaluating impact fees. See Juergensmeyer & Blake, Impact Fees: An Answer to Local Governments' Capital Funding Dilemma, 9 Fla.St.U.L.Rev. 415 (1981). This test was explained in Hollywood, Inc. v. Broward County, 431 So.2d 606, 611-12 (Fla. 4th DCA), review denied, 440 So.2d 352 (Fla. 1983), as follows:
In order to satisfy these requirements, the local government must demonstrate a reasonable connection, or rational nexus, between the need for additional capital facilities and the growth in population generated by the subdivision. In addition, the government must show a reasonable connection, or rational nexus, between the expenditures of the funds collected and the benefits accruing to the subdivision. In order to satisfy this latter requirement, the ordinance must specifically earmark the funds collected for use in acquiring capital facilities to benefit the new residents.
*638 The use of impact fees has become an accepted method of paying for public improvements that must be constructed to serve new growth. See Home Builders & Contractors Ass'n v. Board of County Comm'rs, 446 So.2d 140 (Fla. 4th DCA 1983) (road impact fees upheld), review denied, 451 So.2d 848 (Fla.), appeal dismissed, 469 U.S. 976, 105 S.Ct. 376, 83 L.Ed.2d 311 (1984); Hollywood, Inc. v. Broward County, 431 So.2d at 606 (park impact fees upheld). However, the propriety of imposing impact fees to finance new schools is an issue of first impression in Florida.[2]
Turning to the first prong of the dual rational nexus test, we must decide whether St. Johns County demonstrated that there is a reasonable connection between the need for additional schools and the growth in population that will accompany new development. In the ordinance, the county commissioners made a legislative finding that the county "must expand its educational facilities in order to maintain current levels of service if new development is to be accommodated without decreasing current levels of service." St. Johns County, Fla., Ordinance 87-60, § 1(C) (Oct. 20, 1987). No one quarrels with this proposition. However, an impact fee to be used to fund new schools is different from one required to build water and sewer facilities or even roads. Many of the new residents who will bear the burden of the fee will not have children who will benefit from the new schools. Thus, Dr. Nicholas determined that on average there are 0.44 public school children per single-family home in St. Johns County. Applying the single-family home ratio to a per-student cost calculation, he concluded that it required $2,899 per new single-family home to build the school space anticipated to be needed to serve the children who would live in the new homes. Finding that existing taxes and revenue sources would produce $2,451 per single-family home, Dr. Nicholas concluded that for each new single-family home there was an average net cost of $448 for building new schools that would not be covered by existing revenue mechanisms. He made similar calculations based upon his determination of the number of public school children residing in multiple family units of construction.
The builders argue that because many of the new residences will have no impact on the public school system, the impact fee is nothing more than a tax insofar as those residences are concerned. We reject this contention as too simplistic. The same argument could be made with respect to many other facilities that governmental entities are expected to provide. Not all of the new residents will use the parks or call for fire protection, yet the county will have to provide additional facilities so as to be in a position to serve each dwelling unit. During the useful life of the new dwelling units, school-age children will come and go. It may be that some of the units will never house children. However, the county has determined that for every one hundred units that are built, forty-four new students will require an education at a public school. The St. Johns County impact fee is designed to provide the capacity to serve the educational needs of all one hundred *639 dwelling units. We conclude that the ordinance meets the first prong of the rational nexus test.
The question of whether the ordinance meets the requirements of the second prong of the test is more troublesome. As indicated, we see no requirement that every new unit of development benefit from the impact fee in the sense that there must be a child residing in that unit who will attend public school. It is enough that new public schools are available to serve that unit of development. Thus, if this were a countywide impact fee designed to fund construction of new schools as needed throughout the county, we could easily conclude that the second prong of the test had been met.
However, the St. Johns County impact fee is not effective within the boundaries of a municipality unless the municipality enters into an interlocal agreement with the county to collect the fee. The ordinance provides that the funds shall be spent solely for school construction necessitated by new development. However, there is nothing to keep impact fees from being spent to build schools to accommodate new development within a municipality that has not entered into the interlocal agreement.[3] Therefore, as in the ordinance first considered in Contractors & Builders Association v. City of Dunedin, there is no restriction on the use of the funds to ensure that they will be spent to benefit those who have paid the fees.[4] As a consequence, we hold that no impact fee may be collected under the ordinance until such time as substantially all of the population of St. Johns County is subject to the ordinance.[5]
The builders also contend that the ordinance violates article IX, section 1 of the Florida Constitution, which provides:
SECTION 1. System of public education.  Adequate provision shall be made by law for a uniform system of free public schools and for the establishment, maintenance and operation of institutions of higher learning and other public education programs that the needs of the people may require.
Insofar as the constitution provides for "free public schools," it is clear that no student may be required to pay tuition as a condition of being admitted into school. Of course, this does not mean that the students' parents are exempt from paying any of the costs of maintaining the school system. Obviously, property owners who have children pay ad valorem taxes, portions of which pay for schools. The mandate of free public schools insures that students' access to public schools is not dependent upon the payment of any fees or charges. Under the schedule of charges in the St. Johns County ordinance, the payment of the impact fees is unrelated to school attendance. Thus, to the extent *640 that the impact fee is imposed upon each dwelling unit, we see no violation of the constitutional imperative of free schools.
The builders point out, however, that the feepayer is given an alternative to paying the impact fee set forth in the uniform schedule of fees. Thus, section 7 of the ordinance provides in part:
B. If a feepayer opts not to have the impact fee determined according to paragraph (A) of this section, then the feepayer shall prepare and submit to the St. Johns County School Board an independent fee calculation study for the land development activity for which a building permit or permit for mobile home installation is sought. The student generation and/or educational impact documentation submitted shall show the basis upon which the independent fee calculation was made. The St. Johns County School Board may adjust the educational facilities impact fee to that deemed to be appropriate given the documentation submitted by the fee payer. The County Administrator shall make the appropriate modification upon notice of such adjustment from the School Board.
St. Johns County, Fla., Ordinance 87-60 (Oct. 20, 1987). Dr. Nicholas stated that under section 7(B), the developer of an adult retirement living facility could avoid the payment of the impact fee because no children would be living in the facility. He also said that property owners who warranted that their children would attend private school could be exempt upon the understanding that if a school child later occupied the home, the fee would have to be paid. He acknowledged that childless couples could also obtain an exemption under the same warranty. Thus, in a very real way the alternative mechanism of determining the impact fee under section 7(B) permits households that do not contain public school children to avoid paying the fee. This means that the impact fees have the potential of being user fees that will be paid primarily by those households that do contain public school children, thereby colliding with the constitutional requirement of free public schools.
The county asks that if we conclude that section 7(B) has the effect of converting the educational facilities impact fee into a user fee, the offending section be severed in order to preserve the validity of the balance of the ordinance. The ordinance contains a severability clause. A legislatively expressed preference for severability of voided clauses, although not binding, is highly persuasive. State v. Champe, 373 So.2d 874, 880 (Fla. 1978). Severance of section 7(B) will not impair the operation or effectiveness of the ordinance. Further, the severance of section 7(B) will not affect the stated purpose or intent of the ordinance, which reads:
Section Three: Intents and Purposes
A. This ordinance is intended to assist in the implementation of the St. Johns County Comprehensive Plan.
B. The purpose of this ordinance is to regulate the use and development of land so as to assure that new development bears a proportionate share of the cost of capital expenditures necessary to provide public educational sites and facilities in St. Johns County.
St. Johns County, Fla., Ordinance 87-60 (Oct. 20, 1987). We believe the ordinance, absent section 7(B), constitutes a workable scheme within the legislative intent.[6]See Eastern Air Lines, Inc. v. Department of Revenue, 455 So.2d 311, 317 (Fla. 1984) (severance appropriate if legislative intent can be accomplished absent invalid portions and if remainder of law is not rendered incomplete by severance), appeal dismissed, 474 U.S. 892, 106 S.Ct. 213, 88 L.Ed.2d 214 (1985); State ex rel. Boyd v. Green, 355 So.2d 789 (Fla. 1978) (test for severability is whether portion to be stricken is of such import that remainder would be incomplete or would cause results not contemplated by the legislative body).
The builders further contend that the ordinance conflicts with the requirement *641 of a "uniform system" of public schools contained in article IX, section 1 of the Florida Constitution. In School Board v. State, 353 So.2d 834 (Fla. 1977), this Court rejected the thought that the constitutional provision required uniformity in physical plant or curriculum from county to county. To the contrary, the Court said:
By definition, then, a uniform system results when the constituent parts ... operate subject to a common plan or serve a common purpose.
Id. at 838. We see nothing in this section of the constitution that mandates uniform sources of school funding among the several counties. In fact, it could be argued that educational facilities impact fees are themselves a vehicle for achieving a uniform system of free public schools because in rapidly growing counties ordinary funding sources may not be sufficient to meet the demand for new facilities. We further note that the legislature must contemplate that the uniform system of free public schools may be funded by a variety of sources, including county funds, because section 236.24(1), Florida Statutes (1989), provides:
(1) The district school fund shall consist of funds derived from the district school tax levy; state appropriations; appropriations by county commissioners; local, state, and federal school food service funds; any and all other sources for school purposes; national forest trust funds and other federal sources; and gifts and other sources.
(Emphasis added.) Sections 236.012(4) and 236.35, Florida Statutes (1989), also suggest that the legislature did not intend to limit the financing alternatives available to individual school districts or counties.
The builders' reliance upon Brown v. City of Lakeland, 61 Fla. 508, 54 So. 716 (1911), is misplaced. This case held that the legislature could not authorize municipalities to issue bonds for the purpose of erecting schools that would be paid by a municipal tax levy. However, the provisions of the 1885 constitution upon which the Court predicated its decision have not been carried forward into our present constitution.
The Florida Constitution only requires that a system be provided that gives every student an equal chance to achieve basic educational goals prescribed by the legislature. The constitutional mandate is not that every school district in the state must receive equal funding nor that each educational program must be equivalent. Inherent inequities, such as varying revenues because of higher or lower property values or differences in millage assessments, will always favor or disfavor some districts. We hold that the ordinance does not violate the requirement of a uniform system of public schools. See Penn v. Pensacola-Escambia Governmental Center Auth., 311 So.2d 97 (Fla. 1975) (even if city or county funds benefitted the capital needs of the school board, there would be no violation of article IX).
We also reject the builders' contention that the county is preempted by the constitution and by state law from enacting the ordinance. The builders' argument is twofold. First, they claim that the ordinance interjects the county into an area in which school boards have been given exclusive authority by constitution and by statute. Because school boards have the authority to tax under article IX, section 4(b) of the Florida Constitution, the builders reason, counties and school boards must be fiscally independent of each other. They also assert that under section 230.23(10)(a), Florida Statutes (1989) (School Boards shall "arrange for the levying of district school taxes necessary to provide the amount needed from district sources."), school boards have exclusive authority to secure financing of public schools through appropriate channels. Second, the builders argue that the pervasive legislative control of various aspects of school financing evinces an intent that the legislative scheme be the sole mechanism for funding school construction.
We do not agree. Article VIII, section 1(f), provides:
The board of county commissioners of a county not operating under a charter *642 may enact, in a manner prescribed by general law, county ordinances not inconsistent with general or special law ... .
(Emphasis added.) The implementing statute, section 125.01(1), Florida Statutes (1989), provides the governing body of a county with home-rule power, unless the legislature has preempted a particular subject by general or special law. Speer v. Olson, 367 So.2d 207, 210-11 (Fla. 1979). The provisions of section 125.01 are to be liberally construed "in order to ... secure for the counties the broad exercise of home rule powers authorized by the State Constitution." Section 125.01(3)(b), Fla. Stat. (1989).
We do not find the ordinance inconsistent with the constitutional and statutory provisions cited by the builders. First, article IX, section 4(b) is only a grant of taxing authority to the school boards. It does not limit the imposition of a fee such as the one at issue here. Nor does that provision in any way limit county involvement in school financing. Further, section 230.23 does not place the exclusive duty to secure adequate public school financing with school boards. Finally, nothing in the legislative scheme regarding education finance suggests a legislative intent to preempt county involvement in the financing of public schools. To the contrary, various statutes make clear that the legislature contemplated county involvement in educational funding. See §§ 236.012(4), 236.24(1), 236.35, Fla. Stat. (1989). Even the Local Government Comprehensive Planning and Land Development Regulation Act contemplates that counties should become involved in facilitating the adequate and efficient provision of schools. Section 163.3161(3), Fla. Stat. (1989).
Finally, we conclude that the ordinance does not create an unlawful delegation of power. The county determines the amount of the fees and collects them. The money is placed in a separate trust fund. The school board may only spend the funds for the new educational facilities prescribed by the ordinance. The school board must make annual accountings of its expenditure of the funds to the county. There has been no unlawful delegation of power because the fundamental policy decisions have been made by the county, and the discretion of the school board has been sufficiently limited. See Brown v. Apalachee Regional Planning Council, 560 So.2d 782 (Fla. 1990).
We quash the decision below and uphold the validity of the ordinance upon the severance of section 7(B) therefrom. However, no impact fee may be collected under the ordinance until the second prong of the dual rational nexus test has been met.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, KOGAN and HARDING, JJ., concur.
NOTES
[1] The ordinance applies to residential building permits, permits for residential mobile home installations, and permits to make improvements to land reasonably expected to place additional students in St. Johns County public schools.
[2] We note that other states have upheld school impact fees in the face of various state law and federal constitutional challenges. See Candid Enters., Inc. v. Grossmont Union High School Dist., 39 Cal.3d 878, 705 P.2d 876, 218 Cal. Rptr. 303 (1985) (impact fee imposed by school district to be used for temporary or permanent school facilities necessitated by rapid growth upheld against claim that it was preempted by state law and violated equal protection); McClain W. No. 1 v. San Diego County, 146 Cal. App.3d 772, 194 Cal. Rptr. 594 (1983) (county-imposed school impact fee upheld against challenge that fee was unreasonably applied to project designed to attract weekend or retirement home purchasers where school-age children were not prohibited from residing in units). See also Krughoff v. City of Naperville, 68 Ill.2d 352, 12 Ill.Dec. 185, 369 N.E.2d 892 (1977) (city ordinance requiring developer to make contribution of land or money for school and park sites upheld as within city's home-rule power and not violative of equal protection); Jordan v. Village of Menomonee Falls, 28 Wis.2d 608, 137 N.W.2d 442 (1965) (ordinance requiring dedication of land or payment of money in lieu thereof for schools, parks, or recreational sites upheld against challenge that it constituted an unconstitutional tax and a taking without just compensation), appeal dismissed, 385 U.S. 4, 87 S.Ct. 36, 17 L.Ed.2d 3 (1966).
[3] Even if the ordinance were amended to limit expenditures to schools serving areas subject to the impact fee, we are led to wonder why this would not implicate the requirement of a uniform system of public schools, which is discussed in another context later in this opinion.
[4] In Home Builders & Contractors Association v. Board of County Commissioners, 446 So.2d 140 (Fla. 4th DCA 1983), review denied, 451 So.2d 848 (Fla.), appeal dismissed, 469 U.S. 976, 105 S.Ct. 376, 83 L.Ed.2d 311 (1984), an impact fee to build roads imposed by the county was upheld over the objection that many of the municipalities in the county had declined to join in the collection of the fees. However, because the impact fees in that case were designed to be spent only on roads serving the developments that paid the fees, we assume that the nonparticipating municipalities did not benefit from the funds that were collected.
[5] We do not foreclose the possibility that the ordinance could also meet the second prong of the dual rational nexus test by a showing, based on land use plans and demographic and other statistics, that substantially all of the projected development for the county falls within those areas which are subject to the impact fee. However, we reject the county's suggestion that the requisite nexus could be established by ensuring that collected funds are only spent in a manner benefitting the dwelling units for which the fees have been paid and simultaneously confirming that additional educational facilities needed to serve new dwelling units in nonparticipating municipalities are made available when needed and are funded through nonimpact fee funds. This practice would unfairly discriminate against those paying the impact fees because it would result in an inordinate share of their ad valorem taxes being applied to school construction in municipalities which had not signed an interlocal agreement.
[6] We would not find objectionable a provision that exempted from the payment of an impact fee permits to build adult facilities in which, because of land use restrictions, minors could not reside. See White Egret Condominium, Inc. v. Franklin, 379 So.2d 346 (Fla. 1979).