622 So.2d 944 (1993)
FLORIDA DEPARTMENT OF EDUCATION, Appellant,
v.
Kay E. GLASSER, et al., Appellees.
No. 80286.
Supreme Court of Florida.
May 20, 1993.
*946 Robert A. Butterworth, Atty. Gen. and Joseph C. Mellichamp, III, Sr. Asst. Atty. Gen., Dept. of Legal Affairs, Sydney H. McKenzie, III, General Counsel and Barbara J. Staros, Deputy General Counsel, Dept. of Educ., and Talbot D'Alemberte of Steel, Hector and Davis, Tallahassee, for appellant.
A. Lamar Matthews, Jr., Jeanne S. Medawar and Arthur S. Hardy of Matthews, Hutton & Eastmoore, Sarasota, for appellees.
Robert L. Nabors, Sarah M. Bleakley and Thomas H. Duffy of Nabors, Giblin & Nickerson, P.A., Tallahassee, amicus curaie for Dade, Hernando and Orange Counties.
SHAW, Justice.
We have for review State, Department of Education v. Glasser, 622 So.2d 1003 (Fla.2d DCA 1992), in which the district court affirmed the trial court's declaratory judgment that section 236.25(1), Florida Statutes (1989),[1] and chapter 91-193, § 1, item 509, Laws of Florida, are unconstitutional. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Appellees, individually and as members of the School Board of Sarasota County (school board) filed an action for declaratory judgment against the Sarasota County tax collector. The trial court, in addition to declaring the above-referenced sections unconstitutional, directed the tax collector to collect and remit to the school board taxes assessed against the nonvoted discretionary millage as set by the school board. The issue presented here is whether a school district has constitutional authority to levy such taxes in the absence of enabling legislation. We answer this query in the negative for the reasons hereinafter expressed.
Statutes are presumed to be constitutional and courts must construe them in harmony with the constitution if it is reasonable to do so. Holley v. Adams, 238 So.2d 401, 404 (Fla. 1970). We find that in this instance the constitution and relevant statutes can coact. Our analysis begins with the Florida Constitution. Article VII, in relevant part, provides:
Section 9. Local taxes. 
(a) Counties, school districts, and municipalities shall, and special districts may, be authorized by law to levy ad valorem taxes ... for their respective purposes... .
(b) Ad valorem taxes, exclusive of taxes levied for the payment of bonds and taxes levied for periods not longer than two years when authorized by vote of electors who are the owners of freeholds therein not wholly exempt from taxation, shall not be levied in excess of the following millages[:] ... for all school purposes, ten mills... .
(Emphasis added.)
We attribute to the words "shall ... be authorized by law" their plain meaning: *947 legislative authorization is required to trigger this provision; it is not self-executing. See 1 The Oxford English Dictionary 798-99 (2d ed. 1989) (authorize: "To give legal force to; to make legally valid. To endow with authority"). Had the framers of the 1968 Florida Constitution intended a self-executing grant of power, they could have chosen self-executing language. Our present constitution contains numerous examples of such phrases: "The seat of government shall be the City of Tallahassee, in Leon County... ." Art. II, § 2, Fla. Const. "The supreme executive power shall be vested in a governor." Art. IV, § 1(a), Fla. Const. "The judicial power shall be vested in a supreme court, district courts of appeal, circuit courts and county courts." Art. V, § 1, Fla. Const. Had the framers intended to authorize school districts to levy ad valorem taxes, they could have said simply: "School districts are authorized to levy ad valorem taxes."
Our conclusion that the constitutional provision at issue requires legislative enactment is strengthened by the commentary to the 1968 constitutional revision: "The language [of section 9(a)], mandatory in tone, does contemplate a legislative act for they `shall be authorized by law' to levy ad valorem taxes." 26A Fla. Stat. Ann. 143 (1970) (commentary by Talbot "Sandy" D'Alemberte). The school board nevertheless argues that the word "shall" gives the school district full authorization to levy taxes without the necessity of an enactment. This argument fails to give meaning to the accompanying words "be authorized by law," and for this reason is rejected.
Article IX, section 4(b) of the Florida Constitution provides:
The school board shall ... determine the rate of school district taxes within the limits prescribed herein.
The school board urges and the district court concluded that "within the limits prescribed herein" refers only to the ten-mill cap set out in article VII, section 9(b). We disagree. Such a restrictive reading of article IX again fails to give meaning to the words "be authorized by law" contained in subsection 9(a) of article VII and effectively reads them out of the constitution.
Counsel for the school board, at oral argument, introduced the position that if enabling legislation is required to empower school districts to levy ad valorem taxes, then section 236.25, Florida Statutes (1989), provides the necessary legislation. This is the very legislation declared unconstitutional by the district court at the urging of the school board. It makes no sense to regard this section as, at the same time, both enabling and unconstitutional. More importantly, nothing in section 236.25 authorizes the school board to levy taxes other than those specified by the Legislature.
The school board invites us to define "a uniform system of free public schools,"[2] arguing that St. Johns County v. Northeast Florida Builders Association, Inc., 583 So.2d 635, 641 (Fla. 1991), interprets the constitution as merely requiring a "floor" of educational opportunity and thus the counties are empowered to put into place their own "ceilings." We decline the invitation and leave it to the Legislature, in the first instance, to give content to this constitutional mandate. We may be required in some future case to determine whether the Legislature has provided "a uniform system," but we are not required to do so in the instant case, nor were we required to do so in St. Johns.
The trial court additionally determined that the legislation at issue violates article III, sections 6 and 12[3] of the Florida *948 Constitution.[4] We briefly address these issues. Section 236.25 was amended by chapter 88-557, section 19, Laws of Florida to provide in relevant part that: "The Legislature shall prescribe annually in the appropriations act the maximum amount of millage a district may levy." An examination of chapter 88-557 convinces us that it presents no article III, section 6 or 12 violation. Chapter 88-557 is not an appropriations act, though it refers to the general appropriations act and conforms certain statutes to that act. Nor does chapter 88-557 amend section 236.25 by reference to its title only but, quite the opposite and in full compliance with section 6, it amends by setting out in full the section amended and the amending language.
We furthermore reject the argument that item 509 of the 1991 appropriations act violated article III, section 6. Since item 509 neither revised nor amended section 236.25, the prohibition against amendment by reference to title only is inapplicable.
We also reject the argument that item 509 violates section 12 of the constitution. This Court, in Brown v. Firestone, 382 So.2d 654, 663-64 (Fla. 1980), determined that although an appropriations bill must not change or amend existing law on subjects other than appropriations, this does not foreclose a general appropriations bill from making allocations of state funds for a previously authorized purpose in amounts different from those previously allocated. We read item 509 as doing nothing more than allocating funds for a previously authorized purpose in an amount different from that previously allocated. This we have held not to be a violation of section 12 of the Florida Constitution. We further observed in Brown that a qualification or restriction in an appropriations act will pass constitutional muster if it directly and rationally relates to the purpose of the appropriation. Id. at 664. It is clear, applying these principles to the instant case, that the challenged language[5] is directly and rationally related to the overall purpose of the act.
We at last address the procedural aspects of this case. The school board filed its action for declaratory judgment against the tax collector of Sarasota County, without naming as a party the Department of Education or any other state agency. The board and tax collector stipulated to an expedited hearing to be held the next day, and at the same time notified the Attorney General of the next-day hearing by electronic facsimile transmission. The Attorney General's motion for dismissal, based on the board's failure to name the real party in interest, and his motion for postponement were denied. We hold that the Department of Education should have been named as a party to the trial court proceedings. "Trial by surprise" in cases of statewide importance is bad public policy and will not be condoned. We have said that before any proceeding for declaratory relief is entertained all persons who have an "actual, present, adverse, and antagonistic interest in the subject matter" should be before the court. May v. Holley, 59 So.2d 636, 639 (Fla. 1952); see also Retail Liquor Dealers Ass'n v. Dade County, 100 So.2d 76 (Fla. 3d DCA 1958). The tax collector in the instant case had no interest antagonistic to the school district's interest and, in fact, made little or no attempt to defend the legislation at issue here.
The right to education is basic in a democracy. Without it, neither the student nor the state has a future. Our legislature annually implements a complicated formula[6] to fund this basic right. We find that the legislation at issue here, which is part of the overall funding formula, is in harmony *949 with the Florida Constitution. Accordingly, we reverse the district court and remand for proceedings consistent with this opinion.
It is so ordered.
OVERTON and McDONALD, JJ., concur.
BARKETT, C.J., concurs with an opinion, in which SHAW and HARDING, JJ., concur.
GRIMES, J., concurs with an opinion, in which HARDING, J., concurs.
KOGAN, J., concurs specially with an opinion.
HARDING, J., concurs with an opinion, in which OVERTON, J., concurs.
BARKETT, Chief Justice, concurring.
It is indeed commendable that a community recognizes the educational deficits that result from large class size; reduced support personnel; diminished availability of textbooks, library books, computers, and instructional materials; not to mention a lack of cultural and other enhancement programs. Nor can a community be faulted for attempting to raise the funds necessary to improve educational opportunities for its school children "in the face of draconian state budget cuts." Appellee's Answer Brief at 9.
However, as noted by the majority, the method attempted by Appellees is not a constitutional means of solving the problem. The language of Article VII, section 9(a) of the Florida Constitution must be given its plain and ordinary meaning. This court has no authority to "read out" the words "be authorized by law." We must assume that the framers chose those words for some reason.
I also concur with the majority that this case does not directly present for resolution the meaning of "a uniform system of free public schools." Art. IX, § 1, Fla. Const. Nor, for that matter, does it present the question of what constitutes "adequate provision" for that system of free public schools. Id.
I would hope that school districts now direct their efforts toward assuring adequate state funding for all the educational needs of all our children.
SHAW and HARDING, JJ., concur.
GRIMES, Justice, concurring.
I do not profess to have superior knowledge of this subject, but it strikes me as commendable if a county, through its elected representatives, chooses to impose additional taxes upon itself in order to improve its schools. However, I cannot escape the fact that article VII, section 9 of our constitution contemplates legislative authority for school boards to levy ad valorem taxes, and I do not believe the pertinent language can be fairly construed to mean that the Legislature must authorize a levy up to the ten-mill cap.
HARDING, J., concurs.
KOGAN, Justice, specially concurring.
I do not read the language of article VII, section 9 as being so definite as the majority holds. That language draws a clear distinction between school districts that shall be authorized to levy ad valorem taxes and special districts that merely may be so authorized. Given the obvious contradistinction of the words "shall" and "may," I find it reasonably questionable whether the framers intended both of these words to be given the exact same permissive connotation, as the majority ascribes. To my mind the contrasting of these two words in the same sentence at least implies that "shall" means something apart from "may." Thus, the provision is ambiguous, not definite, and judicial construction is necessary. See Florida League of Cities v. Smith, 607 So.2d 397 (Fla. 1992).
I do not dissent here, however, because I believe the ambiguity is resolved by resort to other provisions of the constitution. The first clause of article IX, section 1 of the Florida Constitution requires a uniform *950 school system to be provided by law.[7] This "uniformity clause" manifestly gives authority to the Legislature to take steps necessary to ensure uniformity; and I believe the courts should show deference to that determination so long as it reasonably may promote the objectives underlying article IX, section 1. Here, the statute in question undoubtedly is a part of the legislative effort to ensure uniformity, and I cannot say it is unquestionably unreasonable. Whether the statute is an overly harsh enforcement of the Legislature's authority is another matter altogether, but one that I believe constitutes a political question beyond the power of any court to decide.
I join Justice Harding in suggesting that the Legislature reconsider this issue. In so saying, I am mindful that there may be sound public policy considerations underlying the millage cap at issue here. Some have argued, for example, that local governments that increase their millage to the ten-mill constitutional cap later may be unable to produce sufficient additional property tax revenues to meet future required local efforts. This especially may be true in light of the voters' decision last November to limit the future property tax assessments of a large percentage of the state's homesteads. See Florida League of Cities. Thus, sound management of maximum local millage rates may be needed to avert a crisis in educational financing, either local or general, at some point in time. Only the Legislature can provide the necessary management, and it should be given deference on the question.
However, as an abstract constitutional principle divorced from any public finance concerns, I am not at all troubled by allowing the voters of a school district to tax themselves an additional amount to enhance local educational programs. Nor do I believe such a decision violates the uniformity clause, at least on the present record and within certain broad limits. The uniformity clause is not and never was intended to require that each school district be a mirror image of every other one. Such a goal is clearly impossible on a practical level, and the constitution should not be read to require an impossibility.
Moreover, Florida law now is clear that the uniformity clause will not be construed as tightly restrictive, but merely as establishing a larger framework in which a broad degree of variation is possible. As Justice Grimes noted in a scholarly analysis in 1991, variance from county to county is permissible so long as no district suffers a disadvantage in the basic educational opportunities available to its students, as compared to the basic educational opportunities available to students of other Florida districts. St. Johns County v. Northeast Florida Builders Ass'n, Inc., 583 So.2d 635 (Fla. 1991); see School Board v. State, 353 So.2d 834 (Fla. 1977); Penn v. Pensacola-Escambia Governmental Center Auth., 311 So.2d 97 (Fla. 1975). Every justice of the present Court joined in Justice Grimes' analysis, which clearly would allow school districts to provide educational enhancements that may be unavailable in other districts.[8]
For example, the mere fact that one district cannot afford to provide Latin or painting classes, but another can, does not create a lack of uniformity. However, the inability of one district to pay for any instruction whatsoever in mathematics or language and writing skills would constitute a lack of uniformity if any other district is not similarly disadvantaged. The Legislature cannot allow students in one *951 district to be deprived of basic educational opportunities while students in other districts do not suffer the same. Art. IX, § 1, Fla. Const.; St. Johns.
There is a vast grey area lying between the two extremes of my hypothetical here; and in this grey area it is necessarily the Legislature's prerogative to operate according to its own policies. "Uniformity" is a complicated question[9] involving the special expertise of the Legislature, its staff, its advisers on public finance, and the Department of Education. To a substantial degree the Legislature's field of action already is severely limited on one side by constitutional restrictions on the state's tax base,[10] and on the other side by the requirement of uniformity.
A time may yet come when these competing legal restraints cannot be reconciled in at least some counties without substantially altering the present taxing system, which itself may require a constitutional amendment the voters might reject. If the Legislature believes it must restrict local millage rates to delay the approach of that day, then I cannot in good conscience call the action unreasonable. As a general rule the courts should not second-guess the Legislature and its agencies' expertise in this field except in egregious cases.
Reasonable persons may differ over the wisdom of the Legislature's actions here. Accordingly, the presumption favoring the Legislature's actions must prevail, and I concur in the general thrust of the majority opinion and its result. Yet I also would encourage the Legislature to consider whether the restraints imposed here genuinely serve a fiscal purpose or merely stymie educational enhancements the constitution does not forbid. If the latter, nothing but the Legislature's own will justifies the prohibition of which Sarasota County complains.
HARDING, Justice, concurring.
I concur with Chief Justice Barkett and Justice Grimes that it is commendable for counties to want to impose additional taxes to improve schools and education. However, I would go further and encourage the Legislature to consider, if it has not done so, the wisdom of passing enabling legislation to permit those counties which wish to impose taxes for the betterment of education to do so.
OVERTON, J., concurs.
NOTES
[1] Section 236.25(1), Florida Statutes (1989), provides:

In addition to the required local effort millage levy, each school board may levy a nonvoted current operating discretionary millage. The Legislature shall prescribe annually in the appropriations act the maximum amount of millage a district may levy. The millage rate prescribed shall exceed zero mills but shall not exceed the lesser of 1.6 mills or 25 percent of the millage which is required pursuant to s. 236.081(4)... .
[2] Article IX, section 1 of the Florida Constitution provides: "Adequate provision shall be made by law for a uniform system of free public schools... ."
[3] Article III, section 6 in relevant part provides:

No law shall be revised or amended by reference to its title only.
Section 12 provides:
Laws making appropriations for salaries of public officers and other current expenses of the state shall contain provisions on no other subject.
[4] The district court found it unnecessary to address this issue, in view of its determination that the legislation was unconstitutional.
[5] "The maximum nonvoted discretionary millage which may be levied pursuant to the provisions of s. 236.25(1), Florida Statutes, by district school boards in 1991-92 shall be 0.510 mills." Ch. 91-193, § 1, item 509, at 1692, Laws of Fla.
[6] See §§ 236.081, 236.25, Fla. Stat. (1991). See generally id., ch. 236.
[7] The provision states:

Adequate provision shall be made by law for a uniform system of free public schools and for the establishment, maintenance and operation of institutions of higher learning and other public education programs that the needs of the people may require.
Art. IX, § 1, Fla. Const.
[8] North Carolina, which has a highly similar constitutional "uniformity" provision, has reached essentially the same conclusion. Britt v. North Carolina Bd. of Educ., 86 N.C. App. 282, 357 S.E.2d 432 (N.C. App.), aff'd mem., 320 N.C. 790, 361 S.E.2d 71 (1987). I also emphasize that, although the constitution requires a uniform system of free public schools, it stops short of declaring public education to be a fundamental right.
[9] The courts clearly are poorly equipped to deal with the finer nuances of providing for uniformity. Costs of providing an education vary widely throughout the state, for example. Even with cost-of-living adjustments, a fair comparison is difficult due to the considerable geographical, demographical, climatic, historical, and cultural differences of Florida's sixty-seven counties. Of necessity the Legislature must be given substantial leeway in determining how uniformity will be achieved; and the courts will intervene only where the Legislature clearly has failed to fulfill the constitution's mandate.
[10] There is the existing ten-mill constitutional cap on property taxes, the new constitutional limit on homestead assessments, and Florida's heavy reliance on tax sources subject to unpredictable fluctuations, such as the sales tax. A more predictable personal income tax is prohibited by Florida's Constitution.