KOGAN, Judge.
We have for review Board of County Commissioners, Hernando County v. Florida Department of Community Affairs, 598 So.2d 182 (Fla.1992), which expressly construed the Florida Constitution and expressly declared a statute valid. We have jurisdiction. Art. Y, § 3(b)(3), Fla. Const.
The present case involves the status of three special taxing districts in Hernando County. The Township 22 Fire District was created by special act of the Legislature in 1967 to provide fire services to an unincorporated portion of the county, with authority to levy up to three mills in taxes.
The Spring Hill Fire District and the Is-tachatta-Nobleton Recreation District each were created by county ordinance pursuant to the authority granted by section 125.01(5), Florida Statutes (Supp.1974). The former has authority to levy up to 2.75 mills and the latter may levy up to 0.4 mills.
In 1989, the Legislature enacted legislation[1] requiring the Florida Department of Community Affairs (DCA) to classify taxing districts as either independent or dependent. Pursuant to the statute, DCA in 1990 declared the three Hernando County districts to be “dependent.” Hernando County eon- *1332 cedes that the districts are “dependent” as defined in the statute.
The principal consequence of this classification is that the millage of the “dependent” districts is added together with the county’s annual millage rate for purposes of the ten-mill cap on property taxation imposed by the constitution. See § 200.071(2), Fla.Stat. (1991); art. VII, § 9(b), Fla. Const. The county commission must either reduce its own millage or that of the three districts to comply with the ten-mill cap if the aggregate amount exceeds the cap. § 200.071(2), Fla. Stat. (1991).
In 1990 as for several prior years, the total millage of the Hernando County Commission and the three special districts exceeded the ten-mill cap. Based on the new DCA classification, the Florida Department of Revenue (DOR) threatened sanctions; and Hernando County and the districts filed for an injunction and began seeking administrative remedies with DCA. DCA ruled against Hernan-do County and reaffirmed its prior ruling, and the First District affirmed. Hernando County, 598 So.2d at 185.
Hernando County now challenges the district court’s ruling on three bases. First, the county argues that the Legislature lacks any authority to regulate ad valorem millage rates within the ten-mill cap provided in the Constitution. This erroneously assumes that the special districts in question actually are distinct entities for present purposes, when in fact we find that they are not. The true intent of the Legislature here is to restrict the creation of “sham” tax districts that may be used to subvert the ten-mill cap. This policing power arises by necessary implication from article VII, section 9(b) of the Florida Constitution; and it is a power that may be set aside in court only if the Legislature clearly has abused its discretion. For the reasons stated more fully below, we find that the Legislature has not.[2]
Second, Hernando County argues that article III, section 11(b) of the Florida Constitution renders DCA’s actions unlawful on grounds that it unreasonably classifies governmental entities.[3] The county notes that minor alterations in the governmental structure of the special districts would render them “independent,” even though de fac-to they still might be entirely controlled by Hernando County because the majority of the members of their governing boards would be county commissioners. While that may be the case, we do not see this fact as creating a violation of article III, section 11(b).
The latter merely requires that the classification be reasonably related to the subject of the enactment. The constitutional language upon which Hernando County relies does not say that this Court may examine the wisdom of the classification chosen or the fact that it may include broad loopholes. These matters are political questions that fall within the legislative prerogative, not this Court’s purview. Once we find the requisite relationship, our review is at an end.
Here, there is an obvious relationship to the enactment’s subject: As stated above, the Legislature is exercising its authority to police local millage rates by prohibiting the creation of sham special districts to circumvent the ten-mill cap. Cf. Department of Education v. Glasser, 622 So.2d 944 (Fla.1993). The Legislature has chosen to create a particular bright-line test that distinguishes sham districts from others. The mere fact that special-district governments can be reorganized to escape being classified as dependent, yet still remain under the de facto control of a single county commission or mu *1333 nicipality, is not a sufficient reason to invalidate the statute.
We are compelled to this conclusion by the obvious alternative available to the Legislature. Were we to accept Hernando County’s argument in this regard, we believe the Legislature easily could remedy the “defect” merely by classifying as “dependent” any district whose governing board was dominated by a single county commission or single municipality in any manner, even if a minority of board members were not county commissioners or municipal board members. This most certainly would be even harsher treatment, adversely affecting even those governments like amicus Orange County that have reorganized their special districts to be “independent” yet still under the de facto control of a single county commission or municipality.
The fact that the Legislature has chosen to show some leniency to the counties and municipalities in this regard should not be the basis for invalidating the statute, not when the alternative is an even harsher restriction that clearly would be valid. We can conceive that the Legislature made a reasonable decision to include a legal “escape hatch” for governments like those of Hernando and Orange Counties precisely because the Legislature wanted to show some leniency. This, too, renders the classification reasonably related to the subject of the enactment. Thus, the statute must be upheld under article III, section 11(b).
Finally, Hernando County argues that the statute at issue here violates article VIII, section 4 of the Florida Constitution[4] because it transfers powers from one governmental entity to another without proper approval of the voters in the affected districts. We disagree with this contention because the Legislature has chosen to define dependent districts in such a way that the classification only can encompass those governmental units whose primary actions de facto are controlled by a single county or municipal government. That being the case, all power effectively resides in the county or municipal government, and there is no actual power that can be transferred from the dependent special district. It would be irrational to apply article VIII, section 4 in such a situation.
For the foregoing reasons the decision below is approved.
It is so ordered.
BARKETT, C.J., and OVERTON, MCDONALD, SHAW, GRIMES and HARDING, JJ., concur.

. In pertinent part, the statute provides:
“Dependent special district” means a special district that meets at least one of the following criteria:
(a) The membership of its governing body is identical to that of the governing body of a single county or a single municipality.
(b) All members of its governing body are appointed by the governing body of a single county or a single municipality.
(c) During their unexpired terms, members of the special district's governing body are subject to removal by the governing body of a single county or a single municipality.
(d)The district has a budget that requires approval through an affirmative vote or can be vetoed by the governing body of a single county or a single municipality.
[[Image here]]
“Independent special district” means a special district that is not a dependent special district
[[Image here]]
§ 189.403(2), (3), Fla.Stat. (1989).

. Petitioners argue that our recent holding in Department of Education v. Glasser, 622 So.2d 944 (Fla.1993), is readily distinguishable from the question before us today. We need not and therefore do not decide whether the full rationale of Glasser should be applied here, because we have found that the Legislature has authority to create the particular type of tax regulation at issue in this case. Whether the Legislature’s power is any narrower in the context of county governmental taxation is a question we need not address today.

. The constitution provides:
In the enactment of general laws on other subjects, political subdivisions or other governmental entities may be classified only on a basis reasonably related to the subject of the law.
Art. Ill, § 11(b), Fla. Const.

. The constitution provides:
By law or by resolution of the governing bodies of each of the governments affected, any function or power of a county, municipality or special district may be transferred to or contracted to be performed by another county, municipality or special district, after approval by vote of the electors of the transferor and approval by vote of the electors of the transferee, or as otherwise provided by law.
Art. VIII, § 4, Fla. Const.