PARKER, Judge,
dissenting.
In overruling this court’s affirmance of the trial court’s order, the supreme court, in Florida Department of Education v. Glasser, 622 So.2d 944 (Fla.1993), concluded that a school district did not have the constitutional authority to levy taxes assessed against non-voted discretionary millage as set by the school board in the absence of enabling legislation. The School Board of Sarasota County (School Board) now seeks to retain $14,-824,890.38, which is money unlawfully assessed and its earned interest. The trial court awarded this money to the School Board based upon equitable considerations, citing Gulesian v. Dade County School Board, 281 So.2d 325 (Fla.1973). I disagree with the trial court’s conclusion that the School Board is entitled to keep this money.
The trial court’s order concisely presents the history and dilemma in this case:
On May 29, 1993, [t]he Supreme Court of Florida rendered its opinion reversing a decision of the District Court of Appeal, Second District, which had affirmed the final judgment of this Court holding Section 236.25(1), Fla.Stats. [sic] (1989) to be unconstitutional. On July 21, 1993, this Court signed its Final Order Conforming [t]o Mandate and reserved jurisdiction to determine the issue of what should happen to the funds collected by the Plaintiff in reliance on the original final judgment in this case.
By agreement, the monies collected by the Plaintiff were kept in a separate account and were not budgeted nor spent. The Defendant Department of Education urges the Court to order the money returned to the taxpayers. The Plaintiff asks that it be allowed to keep the funds to be spent on the Sarasota County school system.
The evidence presented at the hearing on the issue established that the total amount held by the Plaintiff school board, including interest, is $14,824,890.38. The testimony of the Defendant Tax Collector ^established that a refund would involve about 508,000 checks. If refunded, each taxpayer would receive $29.18.
Such a refund, although not totally impossible, would be extremely difficult and expensive. The Tax Collector stated that it might be possible to complete the process within six to eight months (at a minimum), but at least 21 staff years would be required to accomplish this. Her office would be required to attempt to identify the taxpayer who actually paid the tax, try to locate that person or persons, and issue a check. She estimated that (based on a refund procedure her office conducted involving about 16,000 people in the Town of Longboat Key) that as many as 61,000 checks would be returned as unclaimed. (Ironically, if this figure is correct, the approximately $1,800,000 represented by these cheeks would revert to the State of Florida under the laws applying to unclaimed funds and not to the Plaintiff school board or to Sarasota County.) Finally, the Tax Collector estimated that, since her office does not have all the equipment which would be required to process any type of refund (whether by check or by credit on a future tax bill), she would be required to pay a private contractor at least $482,000.00 to assist in the project.
Testimony presented by the Plaintiff school board established that a severe budget problem was the reason that the suit was filed in the first place and that problem has not improved in the last two years. It is clear that a refund would greatly compound these problems.
The evidence established that the Plaintiff school board acted in good faith at all times pertinent to this case. It levied the *734 increased tax only after successfully obtaining a final judgment from this court. Even though Plaintiff could have relied on the affirmance of this court by the District Court of Appeal, it continued to hold the money in a separate account....
The opinion of [t]he Supreme Court of Florida in Gulesian v. Dade County School Board, supra., controls this case. In that ease, [t]he Supreme Court of Florida approved the ruling of the trial court denying an application for a refund of money received from taxes ultimately found to have been improperly levied. Here, as in that case, a refund would work a great hardship on the Plaintiff school board out of proportion to the interests of the individual taxpayers compared to the needs of the school children of Sarasota County. Here, as in that case, the refund process, whatever its form, would result in great expense and immense administrative difficulties. Here, as in that case, the Plaintiff school board acted in good faith in reliance upon a final judgment of the trial court and the subsequent affirmance of that judgment by the District Court of [AJppeal.
My dissent does not overlook the crisis in funding of public education in Florida. The evidence adduced at the hearing in this case established that the School Board has been forced to abandon numerous important educational programs for children because of a lack of funds. I agree with the several justices on our supreme court who commended the School Board for attempting to gain extra funds to provide for the education of children in Sarasota County.
The law in this state is that a taxpayer normally is entitled to a refund of taxes paid pursuant to an unlawful assessment. Coe v. Broward County, 358 So.2d 214 (Fla. 4th DCA 1978). Further, a denial of a refund of taxes unlawfully assessed by the county cannot be justified on the basis that a refund would result in a disproportionate expense to the county as compared to the benefit to the average taxpayer. Coe, 358 So.2d at 217.
The supreme court, in Gulesian, created a very narrow exception to the taxpayer’s right to a refund of taxes paid pursuant to an unlawful assessment. I, however, believe that Gulesian is distinguishable from this case. In Gulesian, Dade County collected the taxes based on a presumptively valid statute which was later ruled unconstitutional. Here, the School Board persuaded the trial court that a statute limiting the millage collected for the School Board was unconstitutional, and thereafter the taxes were assessed and collected. In Gulesian, the taxes in controversy already were expended for school purposes. Here, the sum in controversy remains intact, collecting interest.
The trial court justified the School Board’s retention of the funds by concluding that the refund process would be extremely difficult and expensive. I do not agree that the tax collector would be required to exert Herculi-an efforts to return this money to the taxpayers. For example, I know of no authority which prohibits the tax collector from giving public notice to taxpayers that a refund is available and thereafter processing those refunds that are requested. Any unclaimed tax refunds could be paid in one lump sum to the state.
I also do not agree that processing the refunds, whether by making refunds to all taxpayers or by utilization of public notice, would be prohibitively expensive. Because interest cannot be refunded in tax refund claims in the absence of statutory authority, the tax collector can use the interest earned on this money to help alleviate the cost of the refund procedure. See Dep’t of Revenue v. Goembel, 382 So.2d 783 (Fla. 5th DCA 1980).
I would reverse the trial court’s order because I believe that this ease does not fall within the narrow exception that the Gule-sian court created. I further believe that a procedure is available which would make the process of refunding the taxes less arduous and less expensive.