JACOB VANATTA, ATTORNEY-GENERAL, v. THE DELA-WARE AND BOUND BROOK RAILROAD COMPANY.

1. Practice on filing informations in the nature of a writ of *quo warranto*, stated.
2. When the Attorney-General files such an information *ex-officio*, no leave of the court is requisite.
3. Such informations are not prohibited by paragraph 9, Article I, of the Constitution of New Jersey.

---

On motion for a judgment upon an information in the nature of a writ of *quo warranto*.

Argued at November Term, 1875, before Justices DEPUE, KNAPP and DIXON.

For the motion, *Vanatta*, Attorney-General.

Contra, *Browning* and *B. Williamson*.

The opinion of the court was delivered by

DIXON, J.   On November 5th, 1875, the Attorney-General, *ex-officio*, filed an information in the nature of a writ of

*quo warranto,* praying process against the Delaware and Bound Brook Railroad Company, and that they might answer to the state by what warrant they claimed to use certain franchises in the information set forth. Thereupon he caused to be issued to the defendants a summons, tested on the same day, returnable November 12th, 1875, calling upon them to answer the information, which summons was returned by the sheriff of Mercer county, " duly served November 5th, 1875, on Samuel K. Wilson, one of the directors of The Delaware and Bound Brook Railroad Company." The defendants having failed to appear or answer the information, the Attorney-General now moves for judgment against them.

He bases his right to judgment upon the provisions of the practice act, which enacts, that " the first process to be made use of in personal actions  .  .  .  . shall be a summons," (*Rev. Stat.,* 1874, *p.* 604, § 49,) and that " the defendant shall file his plea within thirty days after the time limited or granted for filing the declaration, or on failure thereof judgment shall be entered against him," (*Ib.,* § 104,) and upon the eighty-seventh and eighty-ninth sections of the act concerning corporations, (*Rev. Stat.,* 1875, *p.* 32,) which provides for the service of summons in personal actions upon corporations, and that the defendant shall be considered as appearing in court, when the sheriff shall return the summons " served." The groundlessness of this claim is, however, apparent, when we recall the fact that an information in the nature of a writ of *quo warranto* is not a " personal action," to which alone this mode of procedure is made applicable. The personal actions referred to in these statutes, are such actions as are styled personal in contra-distinction from those which are " real " or " mixed," and which are aptly defined by Blackstone, (*Book III, p.* 118,) such as assumpsit, trover, &c. In these, the parties appear before the court as plaintiff and defendant—the one suing for the aid of the court, the other denying any occasion for its interference. This information is not, in such a sense, an action at all. It is rather an inquisition, which the sovereignty, by its courts, institutes for the

purpose of ascertaining whether its prerogative rights have been invaded, to the end that such invasion, if it appear, may be stayed and punished. In *State* v. *Roe*, 2 *Dutcher* 215, this court held that such an information was not "an action" within the statutes of February 1st, 1799, and March 17th, 1855, authorizing defendants to plead several pleas; and the uniform practice in this state has been inconsistent with the idea that procedure upon information is controlled by the provisions for regulating the practice in ordinary suits. The cause, therefore, is not ripe for judgment against the defendants.

The practice at common law upon informations in the nature of writs of *quo warranto*, was to bring in the defendant by process; subpœna and attachment, when the defendant could be personally served, and was liable to arrest; *venire facias* and *distringas*, in other cases, as against peers, corporations, etc. If an appearance was not thus procured, proceeding to outlawry were had against defendants subject to it, and a judgment that the office or franchise, said to be usurped, should be seized, was rendered; whether this judgment would mature into a final adjudication of the right, or was merely by way of distress to force the defendant to come within the jurisdiction of the court, may be doubtful. *Rex* v. *Amery*, 2 *T. R.* 515; *S. C.*, 4 *T. R.* 122; 2 *Kyd on Corp.* 496; *People* v. *Richardson*, 4 *Cow.* 97, *note*.

No definite time was required to elapse between the *teste* or service of subpœna and its return. It might be tested on one day and served and returned on the next. *Rex* v. *Ginever*, 4 *T. R.* 594.

The appearance must have been entered on the *quarto die post*, and after the appearance was effected under any of these judicial writs, the defendant must have been ruled to plead. [See note to last case.]

This course was pursued, whether the information was filed under the statute of 9 *Anne*, *ch.* 20, or not.

In New Jersey, however, for over thirty years past, the practice, upon informations filed under our statute, (which,

except as to the franchises and offices to which it is applicable, corresponds with 9 *Anne*,) has been quite uniform and different from that in the King's Bench. In *State* v. *Thompson*, A. D. 1843, *Spen.* 689; *State* v. *Vreeland*, A. D. 1846; *State* v. *Gummersall*, A. D. 1854, 4 *Zab.* 529; *State* v. *Roe*, A. D. 1856, 2 *Dutcher* 215, and *State* v. *Pritchard*, A. D. 1872, 7 *Vroom* 101, which were all under the statute; upon filing the information, a rule was entered that process do issue, and that the defendants plead to the information within such time as the court allowed; in none of these cases, however, was any process issued, but the rule to plead, with a copy of the information being served, the defendants put in their response. This practice, so long and steadily continued, may now be regarded as the proper method of procedure in like cases. The information being filed only after leave of the court granted, and such leave not being given until the defendant has had notice, either from the attorney of the relator or by a rule to show cause, defendants have, by it, ample opportunity for defence. So much of the rule as directs that process issue, may well be dispensed with as useless.

In the case before us, however, the information was not filed under the statute. No leave of the court for its filing was asked, and no notice that it would be filed was given to the defendants. In such cases the practice has not been the same. In the case of *The State* v. *The Associates of the Jersey Company*, A. D. 1849, which was of this sort, on filing the information a summons was issued, returnable to the following term, served upon the secretary of the company; and upon its return, a rule was taken on the defendants to plead in thirty days. That precedent may well be followed, modified only by our change of time as to return of process. The summons may be returnable in vacation, and may be served in the mode in which summons' can be served in ordinary actions, and upon its return a rule to plead may be allowed by the court or a justice. The summons, as served in this case, may stand as valid, and the Attorney-General may take a rule that the defendants plead within thirty days.

It was objected on behalf of the defendants that they should not be put to answer this information, because it was filed without leave of the court. The objection, however, is not well taken. When facts exist which, in the opinion of the Attorney-General, call for a *quo warranto* information, he has the right to present it, without leave asked of any one. In that respect he represents the sovereignty, whose attorney he is. Such a power existed unquestionably at common law, and neither the statute of 9 *Anne* nor our own statute, in any way abridged it. Before 9 *Anne, quo warranto* informations were filed either by the Attorney or Solicitor-General *ex officio,* or by an officer of the court under the direction of the court, at the instance of parties concerned. Such officer, in the King's Bench, was the master of the crown office. The statute of 9 *Anne* merely regulated the practice in some cases of this latter class, requiring the parties concerned to be named as relators and to become responsible for costs, &c. Our statute substitutes the Attorney-General for this master of the crown office and extends the range of the act; but in such case the Attorney-General is only nominally a party—a mere officer of the court—subject to its control; he is not there as Attorney-General, exercising in the cause that power which such officer had at common law, and which he still wields when he appears *ex officio.*

It was further suggested that the proceeding by information was in violation of the ninth paragraph of the first article of the constitution, to the effect that no person shall be held to answer for a criminal offence unless on the presentment or indictment of a grand jury. The old writ of *quo warranto* was clearly of a criminal nature, and the information, which, for centuries past, has served as its substitute, partook of the same character. The punishment inflicted under it was often of substantial consequence. But even in Blackstone's time it had " long been applied to the mere purpose of trying the civil right, seizing the franchise or ousting the wrongful possessor, the fine being nominal only." 3 *Blackst.* 263.

Hurff v. Overseer of city of Camden.

And was then usually considered as merely a civil proceeding. 4 *Blackst.* 312.

After verdict for the defendant in such informations, a new trial may be granted. *Rex* v. *Francis,* 2 *T. R.* 484.

The suggestion has not before been made since the adoption of the constitution in 1844, or, if made, it has been disregarded and cannot now prevail.