WALTER D. VAN RIPER, Attorney-general of the State of New Jersey and Acting Prosecutor of the Pleas of Hudson County and CHARLES H. SCHOEFFEL, Superintendent of the State Police, petitioners-appellants,

*v.*

HARRY A. JENKINS and EDWARD J. MESCALL, complainants-respondents, and WILLIAM McGOVERN, Sheriff of the County of Hudson, defendant-respondent.

[Argued October 23d, 1945.  Decided January 31st, 1946.]

100

Mr. *Mark Townsend* (Mr. *Waller D. Van Riper* and Mr. *Mark Townsend,* of counsel), for the petitioners-appellants.

Mr. *Thomas H. Brown,* for the complainants-respondents.

The opinion, of the court was delivered by

BROGAN, CHIEF-JUSTICE.

An order to show cause was allowed in the Court of Chancery which contained a temporary restraint against the sheriff of Hudson County and other peace officers described generally, not by name or precise rank, from taking the fingerprints and photographs of the complainants as required by statute (*R. S. 53:1–15 et seq.*). On the return day of that order the Attorney-General of New Jersey, *qua talis,* applied in open court for leave to intervene in this cause. Leave was denied. He then requested the court to permit him to appear *amicus curiæ.* This was allowed. We presume he submitted a brief.

Thereafter the Attorney-General, on notice to complainants' solicitors, filed a formal petition for leave to intervene as defendant in his own behalf as well as in behalf of the Superintendent of State Police. This application, after argument, was likewise denied. The defeated petitioners appeal.

The question before us arose out of these events: Harry A. Jenkins and Edward J. Mescall, chief and deputy of the

Union City police department, respectively, had been indicted in the Hudson County district; before arraignment and plea they filed a bill in our Court of Chancery praying that the sheriff of Hudson County be enjoined from fingerprinting them and taking their photos and from forwarding the prints and the pictures to the Superintendent of State Police, as ordained by the statute, *supra,* in advance of conviction under the indictment. Upon the filing of the bill the *ad interim* injunction was allowed *ex parte.* The show cause order restrained the sheriff of the county and his deputies and subordinates as well as chiefs of police and members of the State Police from "taking the fingerprints and photographs of the complainants * * * and from forwarding the same to the State Police," &c. At the foot of the order provision was made for the dissolution or modification of the restraint on notice. This was the posture of the matter on the return day of that order when the Attorney-General first sought to intervene. When later he filed the formal petition, as stated above, the situation was unchanged. This matter has not proceeded to final hearing, the present appeal being from an order interlocutory in character. At least one phase of the main question is now under consideration by this court in another case, *i. e., McGovern* v. *Van Riper et al.* (No. 239, October term).

The Vice-Chancellor entertained the view that the Attorney-General had no interest in the controversy and his formal application to intervene was denied. This, we think, was erroneous.

The petition of the Attorney-General was made in his representative capacity. As such he is the chief law officer of the state and is concerned with certain of the legal affairs of the entire community. In this instance his was the duty to vindicate, in his capacity of principal law officer of the state, the statutes under attack. These statutes manifestly, since the time of their enactment (*P. L. 1930 ch. 65*), became ancillary to the administration of our criminal law, a matter of supreme importance to the people. Certainly the sovereign state is concerned when its laws of this character are challenged. The state has entrusted to its Attorney-General the management of its legal affairs and the validity of this statute

is a matter of cardinal importance and interest to the state. In England the Attorney-General is a necessary party to all proceedings affecting the Crown (*3 Enc. Brit. 63*) and enjoys high prerogative rights (*17 L. R. A. 145;* compare *Attorney-General* v. *Delaware and B. B. R. R. Co., 38 N. J. Law 282; 3 Bl. Com. 27*). The duty of an Attorney-General is essentially a public one. Among other things, he is called upon to advise those who administer the government of the state and in the absence of judicial decision his opinions become the guide for such executives. He is a constitutional officer (*Article 7, section 2, paragraph 3;* see, also, *paragraph XII, Constitution 1776*) although nothing more is said about that official except that the manner of his appointment is prescribed and his term fixed. His duties, therefore, descended from the common law, though they may be enlarged or circumscribed by the legislature. *Cf. State* v. *DeLorenzo, 81 N. J. Law 613; Commissioners* v. *Lehigh Valley Railroad, 106 N. J. Law 411.*

In our sister State of New York in any proceeding, civil or criminal, in which the constitutionality of a statute is brought into question the court may, by order on its own motion, direct that notice be given the Attorney-General to appear in support of the constitutionality of such statute. Any party to such proceeding may apply for such order, or the Attorney-General may apply on his own motion. When such order is made the duty arises on the part of the Attorney-General to support the constitutionality of such statute (*Exec. Law,* § *68; L. 1909, ch. 23*).

We do not intend to intimate that it is the duty of the Attorney-General in New Jersey to enter into a private litigation where a statute is assailed as unconstitutional (*5 Am. Jur. pp. 242* and *243*), but where the rights of the state or the welfare of the people are involved the situation is patently different (*Cf. Varick* v. *Smith, 5 Paige (N. Y.) 137*). In the instant case the people have an interest in the subject-matter of the suit. This is a suit of a public nature, emerging as it does from an indictment. 'If the order or decree settles the rights of the parties to this litigation and the rights and interests of the people of the state are necessarily involved,

then they are entitled to be represented. The Attorney-General is the people's attorney and is properly in court to represent the state.

Whether the Superintendent of State Police should be permitted to intervene in this case presents a different question. It is true that the bill of complaint prays no relief against the Superintendent of State Police by name or title. Yet he is included in and restrained by the injunctive order of March 15th, 1945. All members of the State Police may take the fingerprints of any person arrested for an indictable offense, &c. (*R. S. 53:1–15*), and the bill of complaint, while naming only the sheriff of Hudson County as defendant yet prays an injunction not only against the official but his subordinates as well and others designated as "finger-printing officials." In these circumstances, we consider the Superintendent of State Police to be a proper party to the cause.

The argument advanced before the learned Vice-Chancellor in support of the Attorney-General's petition to intervene was based on the thirteenth rule of our Court of Chancery. The part of the rule on which the appellants rely reads: "* * * Where a person, not a party, has an interest or title which the decree will affect, the court, on his application, shall direct him to be made a party." If one reads the rule in its fullness it is clear that it was not aimed at a situation of this character. The right of the Attorney-General to intervene when a public issue is involved, which concerns the welfare of the people, transcends the regulation of a rule of practice. Our statute (*R. S. 52:17–A–4g*) likewise justified the intervention of the Attorney-General.

The order under review is reversed.

*For affirmance*—None.

*For reversal*—The Chief-Justice, Parker, Case, Bodine, Donges, Heher, Perskie, Oliphant, Colie, Wells, Rafferty, Dill, Freund, McGeehan, JJ. 14.