**J. TOM WATSON, as Attorney General of the State of Florida, v. E. N. CLAUGHTON and LILLIAN C. CLAUGHTON, his wife, et al.**

34 So. (2nd) 243 January Term, 1948
February 28, 1948 En Banc
Rehearing denied March 23, 1948

**218**

*J. Tom Watson,* Attorney General, *Sumter Leitner* and *Fred M. Burns,* Assistant Attorneys General, for Petitioner.

*Hunt & Salley, Julius F. Parker* and *Ward & Ward,* for respondents.

BARNS, J.:

The history of this suit is that the Claughtons, as plaintiffs, brought a bill to quiet the tite to certain lands in Dade County, making the City of Miami and the Trustees of the Internal Improvement Fund parties defendants; the Trustees of the Internal Improvement Fund filed their answer, setting forth their claim to the lands in question and, having answered said bill, filed a counterclaim wherein the said Trustees prayed for a decree of the Court confirming and quieting title in said Trustees to certain lands claimed by the plaintiffs, Claughtons, and that the Court decree the said Claughtons and the City of Miami to have no right, title or interest in and to the lands claimed by the Trustees.

The Attornney General of the State of Florida filed his "Answer and Motion to Dismiss," wherein the said Attorney General in and by his Answer states that the bill of complaint involves the constitutionality of Chapters 8305 and 11616, Acts of Florida, 1919 and 1925. The substance of Chapter 8305 is substantially stated in its title, as follows:

"An Act to Grant Certain Water Front Riparian Rights and Submerged Lands in Biscayne Bay East of the City of Miami, Florida, to the City of Miami, in Dade County, Florida."

And the substance of Chapter 11616 is likewise substantially stated in its title, as follows:

"An Act to Grant Certain Lands Submerged and Partly Submerged, in Biscayne Bay, East of the City of Miami, Florida, to the City of Miami, in Dade County, Florida,"—some of which land affected by the two Chapters in the subject matter of Claughton's bill of complaint. The Attorney General by his Answer "admits" the validity of both of said Chapters as vesting the land in the City of Miami as against the claim of Claughton and the unconstitutionality of said Chapters. After having answered the Bill, the Attorney General moves the Court for its dismissal.

The Attorney General also filed a reply to the counterclaim of the Trustees of the Internal Improvement Fund, wherein he reiterates the validity of the said Chapters 8305 and 11616 and the rights of the City of Miami over those of the paintiff, J. N. Claughton, and denies the title to said land to be vested in the Trustees of the Internal Improvement Fund, as in and by said counterclaim of the said Trustees alleged and set forth and likewise moved to "dismiss said counterclaim."

The Trustees filed a motion to strike the purported "Answer and Motion to Dismiss" and the purported "Reply to a Motion to Dismiss Counterclaim" filed by the said Attorney General upon the following ground:

"That on the 6th day of August, A. D., 1947, this Honorable Court, after full hearing and consideration of the intervention petition of the said J. Tom Watson, entered an order rejecting and denying the said petition for intervention; that said order stands unsuperseded and unreversed, and is entited to receive and be accorded the respect and obedience of all parties whomsoever, including the said J. Tom Watson, to whom the said order is particularly and absolutely res adjudicata."

220

And upon the ground that all right, title and interest of the State of Florida in and to the subject matter of the instant litigation was being represented by the Trustees of the Internal Improvement Fund, and that the said peadings filed by the Attorney General should be stricken, which motion to strike was on the same day granted, and the Chancellor, in making such order striking same, therein recited:

"The Court having examined the Motion to Strike herein filed by the defendant and cross-complainant Trustees of the Internal Improvement Fund of the State of Florida, and finding that certain documents entitled 'Answer and Motion to Dismiss' and 'The Attorney General's Reply to and Motion to Dismiss Counterclaim' were submitted and filed in this cause on, to-wit: August 29, 1947, by J. Tom Watson, the Attorney General of Florida, contrary to and in derogation and defiance of, a prior order of this Court entered herein on, to-wit: August 6, 1947, wherein this Court rejected and denied the petition of the said J. Tom Watson for leave to intervene in the instant action; and, it appearing that, notwithstanding the aforesaid order of this Court denying said intervention petition, the said order standing at this point unsuperseded and unreversed, the said Watson heedlessly, improperly and defiantly submitted and filed herein on August 29, 1947, the purported pleadings aforesaid, without approval, sanction or authority of this Court; ... "

From the foregoing order the said Attorney General prosecutes this review by a petition to this Court for certiorari.

The interests which an Attorney General represents are those of the people, and it has been well stated by the Supreme Court of New Jersey as follows:

"The petition of the Attorney General was made in his representative capacity. As such he is the chief officer of the state and is concerned with certain of the legal affairs of the entire community. In this instance his was the duty to vindicate, in his capacity of principal law officers of the state, the statutes under attack. These statutes manifestly, since the time of their enactment, PL 1930, c. 65, NJSA 53: 1-12 et seq.,

became ancillary to the administration of our criminal law, a matter of supreme importance to the people. Certainly the sovereign state is concerned when its laws of this character are challenged. The state has entrusted its Attorney General the management of its legal affairs and the validity of this statute is a matter of cardinal importance and interest to the state. In England the Attorney General is a necessary party to all proceedings affecting the crown (3 Enc Brit 63) and enjoys high prerogative rights (State ex rel. Lamb v. Cunningham, 83 Wis. 90, 53 N.W. 35, 17 L.R.A. 145, 35 Am. St. Rep. 27, compare Attorney General v. Delaware & B. B. R. Co. 38 N.J.L. 282; 3 B.L. Com. 27). The duty of an Attorney General is essentially a public one."—Van Riper v. Jenkins, 140 N.J. 99, 163 A.L.R. 1343, 1344-45, 45 A2d 844.

"In the instant case the people have an interest in the subject matter of the suit. This is a suit of a public nature, emerging as it does from an indictment. If the order or decree settles the rights of the parties to this litigation and the rights and interests of the people of the state are necessarily involved, then they are entitled to be represented. The Attorney General is the people's attorney and is properly in court to represent the State."—Van Riper v. Jenkins, supra.

The Attorney General predicates his right to file pleadings upon Chapter 87 F.S. 1941, F.S.A., Chapter 21820 (Acts 1943), which substantially follows what is known as the "Uniform Declaratory Judgments Act."

"Declaratory Decrees" are to be distinguished from others:

"The distinctive characteristic of a declaratory judgment is that the declaration stands by itself; that is, no executory process follows as of course. In other words, such a judgment does not involve executory or coercive relief."—16 Am. Jur., Declaratory Judgments, Sec. 3, p. 275.

We have held that:

"Except for the coercive element in the judgment or decree we understand that there is no difference between a declaratory judgment or decree and any other judgment between opposing parties."—Headnote 11, Sheldon v. Powell et al., 99 Fla. 782, 128 So. 258.

The purpose of such statutes has been well stated, as follows:

"Thus, it has been said that their primary purpose is to relieve litigants of the common-law rule that no declaration of rights may be udicially adjudged unless a right has been violated for the violation of which relief may be granted and render practical help in ending controversies which have not reached the stage where other legal relief is immediately available."—16 Am. Jur., Declaratory Judgments, Sec. 7, p. 782.

And we have held:

"In its inception the purpose of the declaratory judgment was to 'serve as an instrument of preventive justice,' to render 'practical help' in determining issues and to adjudicate the rights or status of parties without the peril of committing a crime or resorting to violence or breach to put the legal machinery in motion."—Headnote 3, Sheldon v. Powell et al., supra.

The specific section of said Chapter 21820 (Chapter 87 F.S. 1941), upon which the Attorney General relies, is:

"87.10—Parties. When declaratory relief is sought, all persons may be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings. In any proceeding which involves the validity of a municipal ordinance, or franchise, such municipality shall be made a party, and shall be entitled to be heard, 'and if the statute, ordinance or franchise is alleged to be unconstitutional, the Attorney General of the State of Florida or the state attorney of the judicial circuit in which the action is pending shall also be served with a copy of the proceedings and be entitled to be heard." (Laws 1943, c. 21820, Sec. 10).

It will be noted that this Section does not prescribe that the Attorney General shall be a necessary party when the constitutionality of an act is assailed. It only provides that he shall be "heard," and it is left to the sound judicial discretion of the Chancellor as to what action should be had upon the hearing. Neither does 87.10, supra, prescribe the

duties of the Attorney General as to what he should present to be "heard."

It is evident that the intent and purpose of this Section 87.10, supra, was to provide an avenue for the interests of the State to be represented contingent (1) upon the Attorney General's concluding that the State's interests should be represented in such proceedings and (2) upon the Attorney General's making a showing before the Court sufficient to warrant the Chancellor, in the exercise of sound discretion, in making an order permitting it. It was not the purpose to permit the Attorney General to "enter into private litigation where a statute is assailed as unconstitutional . . . but where the rights of the State or the welfare of the people are involved the situation is patently different." (See Van Riper v. Jenkins, 140. N.J. 99, 45 A. (2nd) 844, 163 A.L.R. 1343).

There is no statutory provision governing the matters which the Attorney General should present, nor is there a stated standard to guide the Chancellor in passing upon the matters which the Attorney General might present; both are left open, to be governed by the facts and circumstances and for the exercise of sound discretion in the discharge of their respective duties and functions of office.

Upon the presentation of his petition for intervention, the Attorney General was "heard" within the contemplation of the law. The Chancellor in the exercise of a judicial discretion refused leave for the Attorney General to intervene. The latter acquiesced in such ruling in that he never sought an appellate review of it, and such order has now become final.

To hold, as we are asked to do, that the Attorney General had the right to ignore the order and had the right "as of course" to subsequently file an answer and motion to dismiss, the Court's order to the contrary notwithstanding, would in such instance have the effect of divesting the court if its judicial function and impairing the sound exercise of judicial discretion vested in the court concerning suits before it.

If the Legislature had intended to provide that the Attorney General would be permitted to intervene as a party, with the privilege of filing such pleadings as he might see fit,

it is reasonable to suppose that the statute would have so provided. It did not. The statute provides that he should be "heard," which means that he should be heard according to the merits of what he presented at the hearing and that he should be amenable to the Court's rulings, as are other petitioners.

We hold, therefore, that the petition for certiorari be denied.

THOMAS, C. J., CHAPMAN and SEBRING, JJ., concur.

BUFORD and ADAMS, JJ., dissent.

TERRELL, J., not participating.

ADAMS, J., dissenting:

E. N. Claughton and wife brought a bill to quiet title and for a declarative decree against the City of Miami and the Board of Trustees of the Internal Improvement Fund. The suit brought into question the constitutionality of certain Acts of the Legislature.

The Attorney General, Honorable J. Tom Watson, petitioned to intervene but his petition was denied. Later he filed an answer and a motion to dismiss the bill. These papers were stricken and that order is brought here for review pursuant to our Rule 34.

The Attorney General bases his right to be heard upon Section 87.10, Fla. Stat., F.S.A., which reads:

"When declaratory relief is sought, all persons may be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings. In any proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard, and if the statute, ordinance or franchise is alleged to be unconstitutional, the attorney general of the State of Florida or the state attorney of the judicial circuit in which the action is pending shall also be served with a copy of the proceedings and be entitled to be heard. Laws 1943, c. 21820, Sec. 10."

By the enactment of this statute the Legislature, very wisely, concluded that when any statute was brought into question the State should be represented. No copy of proceedings were served upon the state attorney or the Attorney General. It was error to proceed with the cause without complying with the statute.

This section of the statute is substantially the same as Section 11 of the Uniform Declaratory Judgments Act. See Uniform Laws Annotated, Vol. 9, page 215.

The Alabama Court has held that failure to join a necessary party in a declarative judgment action is not only error but is jurisdictional. Holland v. Flinn, 239 Ala. 390, 195 So. 265.

The courts generally have held it necessary to allow the Attorney General to be heard. See Cummings v. Shipp, 156 Tenn. 595, 3 S.W. (2nd) 1062; Parr v. City of Seattle, 197 Wash. 53, 84 Pac. (2nd) 375; Day v. Ostergard, 146 Pa. Super 27, 21 Atl. (2nd) 586; Application of Van Syckle, 118 N.J.L. 578, 194 Atl. 284; Johnson v. Board of Adjustment and town Councol of Westville, 15 N.J. Misc. 283, 190 Atl. 782 Annotation in 163 A.L.R. 1346.

I think the writ should be granted and the order striking the answer and motion should be quashed.

BUFORD, J., concurs.