622 So.2d 1003 (1992)
STATE of Florida, Department of Education, Appellant,
v.
Kay E. GLASSER, Janice K. Mee, Nancy C. Detert, E. Lee Byron, and M. Jane Hartman, individually and as members of the School Board of Sarasota County, Florida, Appellees.
No. 91-02336.
District Court of Appeal of Florida, Second District.
July 31, 1992.
*1004 Robert A. Butterworth, Atty. Gen., and Joseph C. Mellichamp, III, Sr. Asst. Atty. Gen., Sydney H. McKenzie, III, General Counsel, and Barbara J. Staros, Deputy General Counsel, Tallahassee, for appellant.
A. Lamar Matthews, Jr., Jeanne S. Medawar, and Arthur S. Hardy of Matthews, Hutton & Eastmoore, P.A., Sarasota, for appellees.
Claire L. Hamner of Dickinson, Gibbons, Shields, Partridge, Dahlgren & Collins, P.A., Sarasota, for Sarasota Classified/Teachers Ass'n, amicus curiae.
PER CURIAM.
The appellant, State of Florida, Department of Education (DOE), challenges the trial court's order declaring section 236.25(1), Florida Statutes (1989), and section 1, item 509 of chapter 91-193, Laws of Florida, unconstitutional. We affirm.
Section 236.25(1) provides in part: "In addition to the required local effort millage levy, each school board may levy a nonvoted current operating discretionary millage. The Legislature shall prescribe annually in the appropriations act the maximum amount of millage a district may levy... ." This section further provides that the annual millage rate prescribed shall not exceed the lesser of 1.6 mills or 25 per cent of the *1005 required local effort millage. The required local effort millage, as set forth in section 236.081(4), Florida Statutes (1989), represents the local funds that each school district must contribute annually toward the cost of the Florida Education Finance Program (FEFP) to be eligible to receive funding from the FEFP. The nonvoted discretionary ad valorem taxes, at issue in this case, provide additional local funds to school districts for operating expenses.
In the 1991-92 General Appropriations Act, section 1, item 509 of chapter 91-193 (item 509), the legislature prescribed 0.510 mills as the maximum rate for nonvoted discretionary millage that may be levied by district school boards in 1991-92. This rate was substantially lower than the 1.019 maximum rate that the legislature prescribed for school boards in 1990-91. As a result of the lower maximum rate for discretionary millage, the School Board of Sarasota County (school board) would receive approximately $7 million less from discretionary local ad valorem taxes in 1991-92 than it received in 1990-91.
The school board received a copy of item 509, setting the 0.510 maximum millage rate, in May 1991. Pursuant to section 200.065, Florida Statutes (1989), the school board had to submit a tentative budget and set proposed millage rates prior to July 24, 1991. To avoid major budget shortfalls, the school board needed to set a millage rate higher than the maximum rate permitted by the legislature for discretionary ad valorem taxes. Based on article VII, section 9 and article IX, section 4 of the Florida Constitution, the school board believed that it had the constitutional authority to do so.
Accordingly, in June 1991, the appellees, Kay E. Glasser, Janice K. Mee, Nancy C. Detert, E. Lee Byron, and M. Jane Hartman, individually and as members of the school board, filed an action for declaratory judgment against Barbara Ford-Coates, as Tax Collector of Sarasota County (tax collector), requesting the trial court to determine the validity of item 509 and section 236.25(1). The school board alleged, among other things, that due to the conflict between its constitutional authority and the legislature's actions, it was in doubt as to the nonvoted discretionary millage rate it could set, which the tax collector would be required to collect and remit to the school board.
In addition to serving the tax collector, the school board hand delivered a copy of the complaint to the state attorney in its judicial district. The tax collector subsequently filed an answer denying that the subject laws were unconstitutional. On June 26, 1991, the school board and the tax collector stipulated to an expedited hearing to be held the following day. The school board notified the attorney general, via facsimile on June 26, that the final hearing had been scheduled for June 27.
At the hearing, the attorney general filed a notice of appearance and moved for a dismissal or, in the alternative, postponement of the final hearing, alleging that the school board failed to serve the real party in interest, either the State Board of Education or DOE. The trial court denied the motion. Pursuant to section 86.091, Florida Statutes (1989), the trial court allowed the attorney general to participate in the hearing and defend the constitutionality of the challenged laws. Counsel representing the tax collector and counsel representing the state attorney also attended the hearing.
At the conclusion of the hearing, the trial court entered an order declaring section 236.25(1) and item 509 unconstitutional to the extent that each law limits the school board's authority to assess nonvoted discretionary millage within the ten mill limit prescribed by article VII, section 9. The trial court also declared that both sections violated article III, section 12 by attempting to inject substantive law in an appropriations bill and that item 509 also violated article III, section 6 by amending an existing substantive law by reference to its title or number only. Based on the foregoing, the trial court ordered the tax collector to collect and remit to the school board taxes assessed against the nonvoted discretionary millage set by the school board without regard to section 236.25(1) or item 509.
*1006 The attorney general moved for rehearing and clarification of the order. Thereafter, DOE filed a motion to intervene as a party defendant. After the parties stipulated to DOE's intervention, the attorney general withdrew the motion for rehearing and clarification. DOE filed this timely appeal. The trial court subsequently granted the school board's motion to vacate the automatic stay conditioned upon the school board depositing all taxes collected in excess of the legislature's maximum rate into a separate reserve account until the matter is finally resolved.
Before reaching the merits of this case, we must first address DOE's contention that the trial court erred in denying the motion to dismiss or, in the alternative, motion to postpone. DOE's argument on this point is twofold. First, DOE asserts that the tax collector has no adverse interest, nor any interest for that matter, in this litigation. Therefore, since the tax collector was the only named defendant, DOE contends that there was no justiciable dispute or bona fide controversy between adverse parties. Second, DOE argues that the trial court should have dismissed the action for failure to join an indispensable party, DOE. DOE states that it is the only party whose interest would be adversely affected by the trial court's order. We disagree with both arguments and find that the trial court properly denied the motion to dismiss or postpone.
The goals of the declaratory judgment act are to relieve litigants of the common law rule that a declaration of rights cannot be adjudicated unless a right has been violated and to render practical help in ending controversies which have not reached the stage where other legal relief is immediately available. Bell v. Associated Independents, Inc., 143 So.2d 904 (Fla. 2d DCA 1962). The tax collector is authorized and obligated to collect and remit ad valorem taxes levied by the school board. §§ 192.001(4), 197.332, 237.091, Fla. Stat. (1989). If the school board had attempted to levy taxes pursuant to its constitutional authority rather than asking the court for a declaration on the validity of the subject laws, the tax collector could not have performed her duties in compliance with state law. To comply with the challenged statutes, the tax collector would have had to ignore the school board's resolution and infringe upon the school board's constitutional authority.
The tax collector is the party who must act for the school board to receive funds from its levy of ad valorem taxes. § 237.091(3). In fact, complete and full relief could not be given as requested in the complaint unless the tax collector was made a party. To grant the relief requested by the school board, it was necessary for the trial court to order the tax collector to collect and remit a certain amount based on the trial court's declaration. Accordingly, the tax collector's interest was sufficient to create a bona fide and practical need for declaration pursuant to section 86.091. See May v. Holley, 59 So.2d 636 (Fla. 1952). See also Riviere v. Orlando Parking Comm'n, 74 So.2d 694 (Fla. 1954) (both parties in doubt as to legal rights); Rigby v. Liles, 505 So.2d 598 (Fla. 1st DCA 1987) (declaratory judgment act should be liberally construed to accomplish purpose of act).
Although DOE may have been a proper party for the school board to join in its action, it was not a necessary nor indispensable party. A proper party is one who has an interest in the subject matter of the action, but whose absence will not prevent a judgment determining the issues between the parties. N & C Properties v. Vanguard Bank & Trust Co., 519 So.2d 1048 (Fla. 1st DCA), review denied, 529 So.2d 694 (Fla. 1988). The school board was alleging that section 236.25(1) and item 509 were facially unconstitutional, not unconstitutional as applied. Thus, it was not necessary for the trial court to consider DOE's interest or position concerning the validity of the challenged legislation to make a determination as a matter of law. See Department of Revenue v. Florida Home Builders Ass'n, 564 So.2d 173 (Fla. 1st DCA 1990), review denied, 576 So.2d 286 (Fla.), appeal dismissed, 581 So.2d 164 (Fla. 1991). Pursuant to section 86.091, the *1007 attorney general participated in the final hearing and strenuously defended this case, arguably on behalf of DOE. See Watson v. Claughton, 160 Fla. 217, 34 So.2d 243 (Fla. 1948) (purpose of provision in declaratory judgment act requiring notice to attorney general is to provide avenue for interests of state to be represented). See also Mayo v. Nat'l Truck Brokers, Inc., 220 So.2d 11 (Fla. 1969); cf. Barragan v. City of Miami, 545 So.2d 252 (Fla. 1989) (city strenuously litigated on behalf of its pension fund). In fact, the same attorney who participated in the final hearing for the attorney general signed the stipulation on motion for intervention as counsel for intervenor, DOE.
Further, the alleged indispensable party, DOE, was allowed to intervene while a motion for rehearing and clarification was pending and permitted to fully brief and argue their position on appeal to this court. See Mills v. Doyle, 407 So.2d 348 (Fla. 4th DCA 1981). Since the trial court found the challenged laws facially unconstitutional, postponement of the hearing to allow additional testimony or DOE's participation would not have changed the outcome. The specific terms of section 86.091 provide that the declaration will not prejudice the rights of any person not a party to the proceeding and state that all persons having an interest that would be affected by the declaration "may" be joined. DOE has not demonstrated any prejudice. DOE intervened as a party while a motion for rehearing and clarification was pending and, therefore, could have joined the motion to present its position to the trial court. To the contrary, DOE joined the attorney general's notice of withdrawal of motion for rehearing and clarification. Accordingly, we find that the trial court did not err in denying the motion to dismiss or postpone, and we will proceed to decide this case on the merits.
The central issue in this case is whether school districts have constitutional authority to levy ad valorem taxes and, if so, to what extent. We hold that article VII, section 9 and article IX, section 4(b) expressly grant constitutional authority to the school districts to levy ad valorem taxes for school purposes within the ten mill limit of article VII, section 9(b). Accordingly, the legislature cannot usurp the school district's authority to levy within the ten mill limit as it has attempted to do in section 236.25(1) and item 509.
Article VII, section 9 provides in pertinent part:
(a) Counties, school districts, and municipalities shall, and special districts may, be authorized by law to levy ad valorem taxes and may be authorized by general law to levy other taxes, ... .
(b) Ad valorem taxes, ... shall not be levied in excess of the following millages upon the assessed value of real estate and tangible personal property: for all county purposes, ten mills; for all municipal purposes, ten mills; for all school purposes, ten mills... .
DOE concludes that the phrase "shall be authorized by law" in article VII, section 9(a) indicates that school districts have no authority to levy ad valorem taxes unless the legislature authorizes such action. Consequently, DOE argues that the ten mill cap in section 9(b) is a limitation only on the legislature's power to determine a specific millage for school purposes. In support of its position that the school district's authority in this area must come from the legislature and is not granted by the constitution, DOE relies on language from the commentary to article VII, section 9 which states that this section "does contemplate a legislative act." We, however, cannot agree that the mere requirement of a legislative act in the constitution necessarily gives the legislature complete control and authority over this subject matter. We find that the mandatory language of section 9(a) alone providing that school districts "shall" be authorized by law to levy ad valorem taxes is sufficient to conclude that the school district's power of taxation in this area is expressly authorized by the constitution. Cf. Mallard v. Tele-Trip Co., 398 So.2d 969 (Fla. 1st DCA), review denied, 411 So.2d 384 (Fla. 1981) (use of word "shall" in article VII, section 9 mandates legislature to authorize power to levy; legislature *1008 has no power to revoke authority in part or in full).
We find no language in either the express terms of section 9 or the commentary on this provision to support DOE's contention that the legislature can restrict the school district's authority to levy ad valorem taxes. The commentary states that subsection (a) "empowers counties, school districts and municipalities to levy ad valorem taxes within the limitations of subsection (b)." The commentary on subsection (a) further states that the language was changed in the new constitution so that "only counties, municipalities and school districts have constitutional authority to levy ad valorem taxes." Likewise, the commentary on subsection (b) states that "counties, municipalities and school districts may not impose" ad valorem taxes in excess of ten mills. Subsection (b) is a restriction on the school district's constitutional authority to levy ad valorem taxes. There is no indication that this limitation is directed to the legislature.
Article IX, section 4(b) further supports the grant of constitutional authority to school boards in the area of ad valorem taxation. See St. Johns County v. N.E. Florida Builders Ass'n, Inc., 583 So.2d 635, 642 (Fla. 1991). Article IX, section 4(b) provides in part: "The school board shall operate, control and supervise all free public schools within the school district and determine the rate of school district taxes within the limits prescribed herein." We agree with DOE that the phrase "within the limits prescribed herein" does place some limitation on the school board's authority to determine the rate of taxes, but we cannot agree that this language gives any authority to the legislature to determine or limit the rate of school district taxes. We construe this provision as referring to the ten mill cap on ad valorem taxes for school purposes imposed upon school districts in article VII, section 9(b). Again, the commentary on the 1968 revision of the constitution does assist us in determining the drafters' intent in this provision. In discussing the clause in article IX, section 4(b) limiting the tax rate within the limits prescribed in the constitution the commentary states "see article VII, section 9(b)." There is no mention nor implication of legislative authority in the commentary on section 4(b), nor any reference to another constitutional provision other than article VII, section 9(b).
Finally, DOE contends that section 236.25(1) and item 509 implement article IX, section 1 which requires the legislature to establish a uniform system of free public schools. DOE concludes that in providing for a "uniform system," the legislature has broad legislative authority, which includes setting the maximum millage rate a school district may be authorized to levy. It is necessary to regulate the amount of nonvoted discretionary ad valorem taxes a school district may levy, DOE argues, because these funds are inextricably interwoven into the FEFP formula that determines the annual allocation of funds to each school district for operation of schools pursuant to section 236.081. DOE states that the legislature's intent is to equalize educational opportunities regardless of geographical differences and varying economic factors in specific districts. See § 236.012(1), Fla. Stat. (1989).
DOE's argument, however, is based on an incorrect premise that a "uniform system" of public schools requires equal dollars be spent on each student. In St. Johns, the supreme court recently held that article IX, section 1 does not mandate uniform sources of school funding among the several counties. The supreme court stated:
The Florida Constitution only requires that a system be provided that gives every student an equal chance to achieve basic educational goals prescribed by the legislature. The constitutional mandate is not that every school district in the state must receive equal funding nor that each educational program must be equivalent. Inherent inequities, such as varying revenues because of higher or lower property values or differences in millage assessments, will always favor or disfavor some districts.
*1009 St. Johns, 583 So.2d at 641.[1] Accordingly, our interpretation of article VII, section 9 and article IX, section 4 previously discussed herein does not conflict with the mandate of article IX, section 1 which requires the legislature to establish a uniform system of free public schools.
We agree with DOE that if the challenged laws can be rationally interpreted to harmonize with the constitution, that construction must be adopted and every reasonable doubt must be resolved in favor of the act. Holley v. Adams, 238 So.2d 401 (Fla. 1970); Knight & Wall Co. v. Bryant, 178 So.2d 5 (Fla. 1965), cert. denied, 383 U.S. 958, 86 S.Ct. 1223, 16 L.Ed.2d 301 (1966). We find, however, that section 236.25(1) and item 509 expressly conflict with designated provisions of the constitution. Carroll v. State, 361 So.2d 144 (Fla. 1978). A statute may not constrict a right granted under the ultimate authority of the constitution. Austin v. State ex rel. Christian, 310 So.2d 289 (Fla. 1975). Cf. Mallard (legislature cannot constitutionally "preempt" counties from levying ad valorem taxes). Article IX, section 4(b) and article VII, section 9(a) grant authority to school districts to determine the millage rate and levy ad valorem taxes for school purposes within the ten mill limit provided in article VII, section 9(b). To the extent an act violates express or clearly implied mandates of the constitution, the act must fall, not merely because the courts so decide, but because the constitution is an authority superior to both the legislature and the judiciary. Adams.
We hold that section 236.25(1) and item 509 are unconstitutional to the extent these laws restrict the right of the school board to levy ad valorem taxes within the ten mill constitutional limit. Based on the foregoing, we need not address the constitutionality of section 236.25(1) and item 509 under article III, section 6 and article III, section 12.
Affirmed.
SCHOONOVER, A.C.J., and FRANK and THREADGILL, JJ., concur.
NOTES
[1] Other courts in construing their respective state constitutions have similarly held that the constitutional mandate of a "uniform system" of public education does not require that expenditures per pupil in every district be equal nor does it prevent local school districts from providing additional educational opportunities beyond the minimum equal opportunity that must be provided by the state. See Shofstall v. Hollins, 110 Ariz. 88, 515 P.2d 590 (1973); Lujan v. Colorado State Bd. of Educ., 649 P.2d 1005 (Colo. 1982); Thompson v. Engelking, 96 Idaho 793, 537 P.2d 635 (1975); Olsen v. State, 276 Or. 9, 554 P.2d 139 (1976); Kukor v. Grover, 148 Wis.2d 469, 436 N.W.2d 568 (1989). We note that the courts in these cases were not considering a challenge to the legislature's authority to control local funding, at issue in the instant case, but were evaluating their respective school finance systems against equal protection challenges based on disparities in school funding because of varying local property taxation. See San Antonio Indep. School Dist. v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).