NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


ERICK VAN LOAN, JOHN J. MORELLI, )
CHARLES ROODHOUSE, and KERRY L. )
KOONTZ, )
)
     Appellants, )
)
v. )    Case No. 2D15-5430
)
HEATHER HILLS PROPERTY OWNERS )
ASSOCIATION, INC.; and RICK AND )
CHRIS STEPHENS, LLC, a Florida )
Limited Liability Company, )
)
     Appellees. )
                             )


Opinion filed December 30, 2016.

Appeal from the Circuit Court for Manatee
County; John F. Lakin, Judge.

Nicholas F. Karatinos of Law Office of
Nicholas F. Karatinos, Lutz, for Appellants.

J. Allen Bobo and Jody B. Gabel of Lutz,
Bobo & Telfair, P.A., Sarasota, for
Appellees.


MORRIS, Judge.

       Erik Van Loan, John J. Morelli, Charles Roodhouse, and Kerry L. Koontz

(the Homeowners) appeal a final judgment dismissing their complaint with prejudice.

The Homeowners filed suit after the Heather Hills Property Owners Association (HHPOA) recorded a declaration of amended restrictive covenants running with the land that—on its face—appears to attach to the titles of all 300 lots in the Heather Hills Estates group of subdivisions (Heather Hills), including the lots owned by the Homeowners. Because we conclude that the Homeowners' complaint sufficiently stated causes of action for declaratory relief, to quiet title, and for damages for slander of title and that those causes of action were not refuted by the exhibits attached to their complaint, we reverse the trial court's order dismissing the complaint.

## BACKGROUND

The Homeowners own individual lots and homes in Heather Hills which was founded in 1967 in Manatee County, Florida. Heather Hills is comprised of six mobile home residential subdivisions. Each subdivision had a separately recorded plat and a set of restrictive covenants that was filed at the time the subdivision was developed. Each original plat and original set of restrictive covenants reserved the right to amend the restrictive covenants to the developer or its successors.[1] Neither the plats nor the original sets of restrictive covenants contain residential age restrictions. Further, the original sets of restrictive covenants which were recorded on the titles of each lot in Heather Hills do not mention a homeowners' association.

The HHPOA was incorporated in 1969 with the stated purpose of promoting recreational and charitable interests for those living in Heather Hills. Membership was voluntary, and the Homeowners have thus far chosen not to join it.

---

[1]Appellee, Rick and Chris Stephens LLC, is the successor in interest to the original developer.

In 2012, the HHPOA amended its articles of incorporation to provide that: "The record title holder of all lots [in Heather Hills] shall be members." The amended articles also changed the purpose of the HHPOA to managing and operating Heather Hills as "a community intended and operated as 'housing for older persons' within the meaning of the Fair Housing Amendments Act of 1988, 42 U.S.C. Sections 3601, et seq., and subsequent amendments thereto." The amended articles stated that the HHPOA would promulgate rules and regulations to effectuate that purpose. The amended articles were filed with the Florida Secretary of State but were not recorded against the titles of the lot owners.

Around the same time, the HHPOA adopted an "Additional Declaration of Covenants, Conditions[,] and Restrictions" which it then recorded in the Manatee County Public Records. These amended restrictive covenants applied to each of the six subdivisions within Heather Hills and were recorded against the title to each and every lot therein. The declaration of amended restrictive covenants purported to convert Heather Hills to an over-55 community. The amended restrictive covenants require that at least one person residing in each dwelling must be over the age of fifty-five, and they provide the HHPOA with the power "to approve in writing all sales, transfers of title, or leases of a lot, block[,] or parcel" after proof of a buyer's age is provided. The declaration expressly states that the amended restrictive covenants are "applicable to and binding upon the lots of all consenting property owners situated in Heather Hills."[2] However, the declaration subsequently states that "the owners who consent to and join

_____

[2]The amended restrictive covenants expressly state that they do not apply to fourteen lots that are identified only by lot number, block, and unit number. Neither party addresses these excepted lots but as evidenced by these proceedings, it apparently does not include the homeowners' lots.

- 3 -

in this Declaration do hereby impose upon the lots, blocks[,] or parcels of such owners in Heather Hills . . . <u>and all members of [the HHPOA]</u>" the covenants, restrictions, and conditions set forth in the document.[3]  (Emphasis added.)  The declaration also provides that the amended restrictive covenants

> shall run with the land and be binding upon . . . the present lot owners who have contemporaneously joined in the making, and have consented to the recording of this Declaration, and on each of said lot owners' respective heirs, successors, personal representatives, grantees and assigns, and on all owners who hereafter evidence their intention to bind themselves and their property to this Declaration, and amendments thereto, by executing and recording a Consent and Joinder Instrument in the official format promulgated by the . . . Board of Directors, and on each of such owners' respective heirs, successors, personal representatives, grantees and assigns; and on all persons or parties claiming by, through or under any of said owners.

Because the Homeowners had not consented to becoming members of the HHPOA or to living in an over-55 community, they filed suit bringing claims for declaratory relief, to quiet title, and for damages for slander of title.[4]  The HHPOA moved to dismiss the complaint asserting that the declaration of amended restrictive covenants, which was attached to the Homeowners' complaint, demonstrated on its face that it applied only to consenting lot owners and, therefore, that because the Homeowners asserted they did not consent and were not members of the HHPOA, the amended restrictive covenants did not apply to them.

---

[3]Additionally, the HHPOA recorded a resolution and affidavit indicating that two-thirds of the HHPOA members consented to having Heather Hills function as an over-55 community.

[4]The Homeowners also brought a claim for injunctive relief arguing that the HHPOA and Rick and Chris Stephens, LLC, were misrepresenting that the community was an age-restricted community.

The trial court agreed and dismissed the complaint without prejudice, finding that the claims to quiet title and for damages for slander of title failed to state causes of action based on the declaration of amended restrictive covenants. The trial court found that the claim for declaratory relief, which was based on the allegation that the defendants were misrepresenting that Heather Hills was an age-restricted community, was moot.

The Homeowners then filed an amended and second amended complaint again asserting claims for declaratory relief, to quiet title, and for damages for slander of title.[5] As with the original complaint, the Homeowners attached the declaration of amended restrictive covenants. However, in the claim for declaratory relief in the second amended complaint, the Homeowners argued that the HHPOA lacked authority to mandate membership in the HHPOA and also lacked authority to adopt new restrictive covenants for Heather Hills. The Homeowners argued that a declaratory judgment was necessary because when reading the HHPOA's amended articles of incorporation in conjunction with the declaration of amended restrictive covenants, it was unclear which lot owners were subject to the amended restrictive covenants.

The HHPOA moved to dismiss raising the same argument it raised in the first motion to dismiss. A second trial court judge heard the HHPOA's second motion to dismiss and, after reviewing the first order of dismissal, entered the order on appeal dismissing the Homeowners' complaint with prejudice. The trial court found that "[t]he covenants indicate on their face that they apply only to lot owners who have consented to bind their respective parcels."

---

[5]The Homeowners did not include a claim for injunctive relief in their amended complaints.

- 5 -

**ANALYSIS**

When considering a motion to dismiss for failure to state a cause of action, a trial court is ordinarily bound to the allegations within the four corners of the complaint and it must accept the material allegations as true. Consuegra v. Lloyd's Underwriters at London, 801 So. 2d 111, 112 (Fla. 2d DCA 2001). However, where an exhibit attached to a complaint contradicts the allegations in the complaint, the exhibits control and may form the basis for a motion to dismiss. See Fladell v. Palm Beach Cty. Canvassing Bd., 772 So. 2d 1240, 1242 (Fla. 2000); Hunt Ridge at Tall Pines, Inc. v. Hall, 766 So. 2d 399, 400 (Fla. 2d DCA 2000). But the trial court must not speculate as to whether the plaintiff can prove its allegations; rather, the question is whether, assuming that the allegations are true, the plaintiff would be entitled to relief. See Meadows Cmty. Ass'n v. Russell-Tutty, 928 So. 2d 1276, 1279 (Fla. 2d DCA 2006). A trial court should not dismiss a complaint for failure to state a cause of action unless it can be established that there is no theory that would support the plaintiff's request for relief. Id. at 1280. We conduct de novo review of an order of dismissal for failure to state a cause of action. Id. at 1278.

**I.      Claim for Declaratory Judgment**

The purpose of a declaratory judgment is to determine the rights and duties of a party without resorting to a tort or contract action. See Watson v. Claughton, 34 So. 2d 243, 245 (Fla. 1948) (en banc). A claim for a declaratory judgment states a cause of action where the plaintiff can demonstrate that he or she is in doubt about the existence or nonexistence of some right, status, immunity, power, or privilege, that he or she is entitled to have the doubt removed, and that there is a bona fide, actual, present,

and practical need for the declaration. <u>Murphy v. Bay Colony Prop. Owners Ass'n</u>, 12 So. 3d 924, 926 (Fla. 2d DCA 2009).

Here, the Homeowners pleaded that they were in doubt about (1) their rights under the amended restrictive covenants to freely alienate their properties without the HHPOA's approval and (2) the legality of the HHPOA's attempt to mandate membership in the HHPOA and to impose age restrictions within Heather Hills. The declaration of amended restrictive covenants was recorded against the title to every lot in Heather Hills, and while the declaration states in some places that the amended restrictive covenants only apply to consenting lot owners, there is no indication as to which lot owners consented. That lack of clarification is exacerbated by the fact that the declaration also states that the consenting lot owners "do hereby impose upon the lots, blocks, or parcels of such owners . . . and <u>all members of [HHPOA]</u>" the covenants, agreements, restrictions and conditions set forth in the declaration. (Emphasis added.) The implication then is that the amended restrictive covenants apply to all members of the HHPOA regardless of the members' individual consent. And because there is no explanation in the declaration as to which lot owners are members of the HHPOA, the declaration (i.e., the exhibit attached to the complaint) does not on its face refute the allegations of the complaint relating to the necessity for a declaratory judgment. Indeed, when the declaration of amended restrictive covenants is read in conjunction with the HHPOA's amended articles of incorporation—which expressly state that all lot owners in Heather Hills shall be members of the HHPOA—the Homeowners' claim of doubt as to their rights is reasonable. This is especially true here because the amended restrictive covenants run with the land and the ambiguity in the declaration of amended restrictive

covenants places a cloud on the titles of the Homeowners' lots.  See Caulk v. Orange County, 661 So. 2d 932, 933 (Fla. 5th DCA 1995) (defining a covenant running with the land as one which binds the heirs and assigns of a covenantor).

The Homeowners also alleged that they purchased their lots prior to the creation of the HHPOA and thus were only subject to the developer's original restrictive covenants.  This is important because the original set of covenants does not mention a homeowners' association nor does it provide any third parties or future homeowners' associations with the right to amend the restrictive covenants.  Rather, the right to modify or amend the restrictive covenants was expressly reserved to the developer and its successors in interest.  Because there was no express delegation of authority to the HHPOA to amend the restrictive covenants, the restrictive covenants can only be amended by the consent of all the property owners in the subdivision.  See Roth v. Springlake II Homeowners Ass'n, 533 So. 2d 819, 820 (Fla. 4th DCA 1988) (explaining that subdivision restrictions "normally cannot be amended without the consent of *all* the property owners" (citing Harwick v. Indian Creek Country Club, 142 So. 2d 128 (Fla. 3d DCA 1962))).  And because the Homeowners alleged that they did not consent to the amendments, there is a legitimate question as to whether the declaration of amended restrictive covenants was effective at all.

Consequently, we conclude that the Homeowners sufficiently stated a cause of action for a declaratory judgment and that the trial court erred by dismissing this count with prejudice.

## II. Claim To Quiet Title

In order to state a sufficient claim to quiet title, a plaintiff must demonstrate (1) that he or she owns the title to the land in controversy; (2) that a cloud on the title exists; (3) that the facts give the claim apparent validity; and (4) that the facts show that the claim is invalid. Stark v. Frayer, 67 So. 2d 237, 238 (Fla. 1953); Woodruff v. Taylor, 118 So. 2d 822, 822 (Fla. 2d DCA 1960); see also §§ 65.021, .061, Fla. Stat. (2015). As we have already explained, because the declaration of amended restrictive covenants does not clearly indicate which lot owners consented to the applicability of the amended restrictive covenants and because the declaration states that the amended restrictive covenants are imposed on "all members of [the HHPOA]" without any clarification as to which lot owners are members, the Homeowners' lots appear to be subject to the amended restrictive covenants. And because the amended restrictive covenants expressly state that they run with the land, they constitute a cloud upon the Homeowners' titles. These facts, in conjunction with the Homeowners' allegations that they neither consented to being members of the HHPOA nor to the imposition of the amended restrictive covenants, sufficiently stated a cause of action for a claim to quiet title, and nothing in the attached exhibits to the complaint refuted the claim. The trial court therefore erred in dismissing the claim with prejudice.

## III. Claim for Damages for Slander of Title

A claim for slander of title requires a plaintiff to show that (1) a defendant published or communicated a falsehood to a third party, (2) the defendant knew or reasonably should have known that the falsehood would likely result in inducing others not to deal with the plaintiff, (3) the falsehood did materially and substantially induce

others not to deal with the plaintiff, and (4) the falsehood resulted in damages that were proximately caused by the published falsehood.  McAllister v. Breakers Seville Ass'n, 981 So. 2d 566, 573 (Fla. 4th DCA 2008); Bothmann v. Harrington, 458 So. 2d 1163, 1168 (Fla. 3d DCA 1984).

The second amended complaint alleged that by filing the amended articles of incorporation and by recording the declaration of amended restrictive covenants which attaches to the Homeowners' lots, the HHPOA falsely declared to the public that membership in the HHPOA was mandatory, that the HHPOA controlled the lots in Heather Hills, that the Homeowners were mandatory members of the HHPOA due to their ownership of lots within Heather Hills, that the Homeowners' lots were subject to an over-55 age restriction, and that the HHPOA possesses the authority to modify or amend the restrictive covenants.  The claim for slander of title also alleged that since 2008, the defendants have posted signs at the entrance to Heather Hills and distributed fliers falsely stating that Heather Hills is a deed-restricted community open only to persons over the age of fifty-five.  The second amended complaint also alleged that the Homeowners were damaged by the loss of value in their lots and their inability to sell the lots or, at the very least, convey them with clear title without having to obtain approval of the HHPOA based on the age of the buyer.

Again, the lack of clarity in the declaration of amended restrictive covenants results in the appearance that the Homeowners' lots are subject to the amended restrictive covenants.  Neither the public nor potential buyers would be aware after reading the HHPOA's amended articles of incorporation and the recorded declaration of amended restrictive covenants that the Homeowners' lots were not

subject to the amended restrictive covenants.  Further, nothing in the exhibits attached to the complaint refute the Homeowners' allegations regarding the posting of signs and distribution of fliers falsely promoting Heather Hills as an over-55 community.  Accordingly, the Homeowners sufficiently stated a cause of action for slander of title, and the trial court erred by dismissing the claim with prejudice.

### IV.    Conclusion

The Homeowners' claims for a declaratory judgment, to quiet title, and for damages for slander of title sufficiently stated causes of action and were not refuted by the exhibits attached to the second amended complaint.  We therefore reverse the trial court's order dismissing the claims with prejudice.

Reversed and remanded for proceedings in conformance herewith.


VILLANTI, C.J., and NORTHCUTT, J., Concur.